[No. 568.    October 30, 1894.]

JOHN W. SCHOFIELD, RECEIVER OF ALBUQUERQUE NATIONAL BANK, PLAINTIFF IN ERROR, v. STEPHEN M. FOLSOM, DEFENDANT IN ERROR.

ASSIGNMENT FOR BENEFIT OF CREDITORS — ASSUMPSIT — ATTACHMENT AFTER EXECUTION OF DEED OF ASSIGNMENT AND BEFORE FILING AND APPROVAL OF ASSIGNEE'S BOND.—By section 8, Act, February 19, 1889, it is provided that, in case of a voluntary assignment for the benefit of creditors, the assignment "shall not become operative," and the assignee shall not enter into possession of the property assigned until he has executed "a good and sufficient bond." Section 37, Act, February 20, 1889, provides that "no process of attachment shall issue * * * after such assignment has been duly made, as in this act contemplated;" and, by the first section of this act, the only thing required of the assignor is that he execute an assignment

according to the formalities required for the conveyance of real
estate. In a suit in assumpsit, by attachment, where the writ was
issued and levied after a deed of assignment had been executed and
before the assignee's bond was filed and approved, and the court
below, on motion of defendant, quashed the writ, —Held: The
attachment was properly quashed.

ERROR, from an order in favor of defendant,
quashing an attachment, to the Second Judicial District Court, Bernalillo County. Affirmed.

The facts are stated in the opinion of the court.

W. B. CHILDERS for plaintiff in error.

Courts discharging statutory duties and exercising
statutory powers, such as are authorized by the statute,
can not go beyond the statute itself. Railroad Co. v.
Telegraph Co., 112 U. S. 307; Thatcher v. Powell, 6
Wheat. 116.

The performance of a ministerial act by a judicial
officer does not constitute the act a judicial proceeding.
People v. Bush, 40 Cal. 344; 12 Am. and Eng. Encyclopedia Law, 5, et seq.; Cohan v. Barnett, 5 Cal.

The rule that the reenactment of a statute is an
adoption of the decisions construing it has its limitations. Savings Bank v. U. S., 19 Wall. 237; McDonald
v. Henry, 110 U. S. 628; Endlich on Inter. Stats., p.
518, sec. 371; Gage v. Smith, 79 Ill. 224; Jamison v.
Burton, 43 Iowa, 285. See, also, Ingraham v. Regan,
23 Miss. 213.

In many states similar statutes are in force, and
the things required by the statute are held to be conditions precedent, and mandatory. Jaffray v. McGhee,
107 U. S. 361; Gilkerson–Sloss Com. Co. v. London,
13 S. W. Rep. 514; Cohen v. Barton, 21 Atl. Rep. 63;
Turnipseed v. Schaefer, 76 Ga. 109; Fecheimer v.
Baum, 43 Fed. Rep. 728; August v. Calloway, 35 Id.
384; Shakman v. Schlueter, 46 N. W. Rep. 542;

People v. Colerick, 34 Id. 686; Wadleigh v. Schreider, 15 Id. 839; Rendlemann v. Williard, 15 Mo. App. 376; Douglass v. Cissna, 17 Mo. App. 61, 62; Winn v. Madden, 18 Id. 265.

Acts of the same session are parts of the same act, and have effect from the same day, and are taken together as parts of the same act. Brown v. Barry, 3 Dallas, 364. See, also, U. S. v. Freeman, 3 How. 564; Sedg. Const. Stat. 209, and note; Powers v. Shepard, 48 N. Y. 543; Suth. on Stat. Const., sec. 283; Town of Highgate v. State, 7 Atl. Rep. (Vt.) 898; Sedg. Const. Stat. 209, and note; Peirce v. Atwood, 13 Mass. 334; Endlich on Inter. Stats., sec. 45, and cases cited.

Section 8, chapter 67, Laws, 1889, is not repealed by implication. Wood v. U. S., 16 Pet. 363; McCool v. Smith, 1 Black, 459; State v. Macon Co. Court, 41 Mo. 459; Suth. on Stat. Const., sec. 137; Ex parte Smith, 40 Cal. 419.

Section 8, chapter 67, provides that, "the assignment shall not become operative and the assignee shall not take possession" until he has given bond. To "become operative" is to take effect. Douglass v. Cissna, 17 Mo. App. 61, 62. See, also, Hartzler v. Tootle, 85 Mo. 28, where the word "inoperative" was used.

If there be any doubt as to the sense in which a word is used in sections of the same act, prior or subsequent acts in which the word is used on the same subject may be resorted to. Alexander v. Mayor, 5 Cranch, 8; Reiche v. Smythe, 13 Wall. 162; Suth. Stat. Const., sec. 229.

But words are to be taken in their natural and ordinary sense. Millard v. Lawrence, 16 How. 251; Suth. Stat. Const., sec. 248.

Where the meaning of a statute is plain, it is the duty of the court to enforce it according to its obvious terms. Thornley v. U. S., 313.

THOS. N. WILKERSON and F. W. CLANCY for defendant in error.

The statute under which the assignment was made was taken in substance from the Missouri statute, under which such an assignment takes effect from the time of its execution and delivery. Rendlemann v. Wiliard, 15 Mo. App. 380, 381; Douglass v. Cissna, 17 Id. 60, 61; Winn v. Madden, 18 Id. 265; Hartzler v. Tootle, 85 Mo. 28–30.

These cases arose under the Missouri statutes of 1879, and are therefore binding, and must be held as having been enacted by our legislature, and silently incorporated into the territorial statute. Perea v. Colorado Nat. Bank, 6 N. M. 4; McDonald v. Hovey, 110 U. S. 619; Wells on Stare Decisis, sec. 590; Cathcart v. Robinson, 5 Pet. 280; Coulter v. Stafford, 48 Fed. 266; Sanger v. Flow, 48 Fed. 152. See, also, Suth. Stat. Const., sec. 333; Stebbins v. Guthrie et al., 4 Kan. 312.

Even if our statute were not a substantial copy of the Missouri statute, the decisions of that state must commend themselves as founded upon sound reasoning and calculated to effectuate the legislative intent. Sanger v. Flow, 48 Fed. Rep. 152; Clayton v. Johnson, 36 Ark. 406; Thatcher v. Franklin, 37 Id. 64; Rice v. Frayser, 24 Fed. Rep. 460. See, also, Klap's Assignee v. Shirk, 13 Pa. St. 588; Mitchell v. Whillock, 2 Watts & Serg. 254; Fitler v. Maitland, 5 Id. 309; Dallam v. Fitler, 6 Id. 325; Commonwealth v. Watmough, 6 Whart. 116; Finney's Appeal, 59 Pa. St. 398.

There is such an irreconcilable conflict between section 8, chapter 67, Laws, 1889, and the provisions of chapter 71 of the same laws, that they must first be held to be repealed by implication. To hold that two bonds must be given to provide security for the faith-

ful administration of the estate, would be to impute folly to the legislature. Endlich on Stats., sec. 264.

Even if there were no conflict between the two statutes, the later one must be considered as containing all the statute law on the subject, because complete in itself. Suth. on Stat. Const., sec. 286; Bartlett v. King, 12 Mass. 544; Nichols v. Squire, 5 Pick. 169; State v. Roller, 77 Mo. 129; Barr v. Flynn, 20 Mo. App. 388; Smith v. State, 14 Mo. 152; Sutton v. Hayes, 17 Ark. 462; Williams v. Beard, 1 Rich. (N. S.) 309.

Reference to the title of an act is proper wherever it may be useful to throw light upon the legislative intent. Suth. on Stat. Const., sec. 210.

To hold that there may be an interval between the execution of the assignment and the execution of the bond of the assignee, when the property may be subject to levy of an attachment, would be to open the door to the perpetration of the wrong which it is the design of the whole statute to prevent. Farmers' Bank v. Hale, 59 N. Y. 56–58.

No proceedings, subsequent to the making of the assignment, can have any effect on the present case. Douglas v. Cissna, 17 Mo. App. 60.

FREEMAN, J.—This is a writ of error brought to reverse the judgment of the district court sitting for the county of Bernalillo. The facts are substantially as follows: On the first day of November, 1893, the defendant, Folsom, executed a deed of general assignment for the benefit of his creditors, and on the same day filed said deed in the recorder's office of Bernalillo county, W. P. Metcalf being named as assignee. On the second day of November the instrument was filed in the office of the clerk of the district court, a notice having been filed on the first of said month, with the district clerk, that the deed had been filed in the re-

corder's office. On the second day of said month the assignment, and a statement of the general nature and value of the estate assigned, required of the assignee by the statute, was filed in the office of the clerk of the district court. This statement fixed the value of the estate at $80,000. The statute requires a statement to accompany the deed of assignment. On the eighth day of November the court appointed two appraisers to appraise the property inventoried by the assignee, reciting that the assignee had filed an inventory. The assignee, however, had not filed any inventory, and did not file any until the tenth, and on the same day the appraisers filed their appraisement of the estate, fixing its value at $34,896. Thereupon the assignee petitioned the court for leave to file, nunc pro. tunc, an amended statement of the nature and value of the estate, and the court allowed it to be filed, to have "the same effect as though it had been filed on the date of making and filing of said deed of assignment." Thereupon the assignee filed this amended statement differing from the previous statement filed with the assignment only as to the value of the estate. This the amended statement gave as $34,896, the amount fixed by the appraisers. Afterward, the amended statement was filed on November 10. On the twenty-ninth the assignee presented a bond to the judge of the court, upon which the judge indorsed: "The foregoing bond approved November 29, 1893." The bond was filed in the clerk's office. On the third day of November, 1893, the plaintiff in error brought suit in assumpsit by attachment against the defendant to recover the sum of $36,010.14. The plaintiff filed the necessary declaration, bond, and affidavit of attachment, and caused writs of attachment to be issued to Bernalillo, Colfax, Santa Fe, Socorro, Dona Ana, and San Miguel counties. On motion of the defendant, the court below quashed the attachment, upon the ground that it was

sued out after the execution and delivery by the defendant of a general assignment for the benefit of his creditors, to which ruling the plaintiff excepted, and assigned error upon the ground that leave could not be granted to the assignee to amend the statement of the value of the estate; that the bond could not be given twenty-eight days after the filing of the deed of assignment; that such bond could not be approved, and was not in a statutory amount; and that, therefore, the assignment was inoperative.

It will be seen by the foregoing statement of facts that the main controversy in this case turns upon the proper construction to be given to the word "operative," as contained in section 8; chapter 67, page 103, Act, February 19, 1889. That act, or so much of it as is necessary for us to consider, is as follows: "In case of any voluntary assignment for the benefit of creditors, such assignment shall not become operative, and the assignee shall not enter into the possession of property assigned, until he shall have executed a good and sufficient bond," etc. The purpose of the legislation from which the foregoing quotation is taken was to prevent a failing debtor from preferring one creditor over another, and it makes any attempt upon the part of a failing debtor thus to prefer one creditor over another an act of insolvency. It is therefore termed the "Involuntary Assignment Act." Notwithstanding, however, that the general purpose of the act is to prevent preference among creditors, and to create out of any such preference an involuntary assignment, this section was evidently incorporated into it as a piece of legislation designed for a wholly different purpose, and relates, by its terms, to voluntary, rather than involuntary, assignments. Section 9 of the same act provides that if an assignee does not, within twelve months, settle up the estate, any creditor may file a bill in chancery to compel settlement and distribution of the

estate. Section 8 provides also, that the bond to be given by the assignee shall be fixed by the district judge; that the bond shall be in a sum not less than double the value of the property assigned, etc. On the next day after the passage of this act, the legislature passed an act regulating voluntary assignments. This act was composed of forty-five sections, and was evidently designed by the legislature to form a complete code of procedure for parties wishing to abandon their estates to their creditors. It provides that this act shall be for the benefit of all of the creditors. The assignee, at the date of the execution of the deed, is required to make a statement as to the nature and value of the estate, and file such statement with the deed for record, and within five days thereafter enter into a bond, etc. The statute further requires that within ten days thereafter the assignee shall file in the office of the district clerk an inventory of the estate. It then becomes the duty of the district judge to appoint appraisers, etc. It also provided that if, upon the appraisement of the estate, it should turn out to be worth more than the value placed upon it by the assignee in his preliminary statement, then his bond shall be increased, etc. Section 37 of this act declares that no process by attachment shall issue on behalf of any creditor of the assignor after such assignment has been duly made, as contemplated by this act.

The foregoing reference to the statutes of this territory, and statement of the facts in this case, sufficiently indicate, as already observed, that the principal point of contention grows out of the question of the proper construction to be given to the following language, as contained in the two acts of the legislature: Section 8, Act, February 19: "In the case of any voluntary assignment for the benefit of creditors such assignment shall not become operative, and the assignee

ATTACHMENT after execution of deed of assignment and before filing and approval of assignee's bond.

shall not enter into possession of the property until he shall have executed a good and sufficient bond," etc. Section 37, Act, February 20: "No process of attachment shall issue after such assignment has been duly made, as in this act contemplated." On the part of the plaintiff it is insisted that, the attachment having been issued and levied before the execution and approval of the bond, the assignment was not operative, and therefore the attachment was good. On the part of the defendant it is insisted that the assignment had "been duly made as in this act contemplated," and that therefore no process of attachment could have been properly issued. The process of attachment in this case was issued after the execution of the deed of assignment, and before the assignee had given bond, and, under the contention of the plaintiff in error, before the assignment had become operative, and therefore before it had been duly made. It is the contention of the plaintiff in error that as the assignment had not become operative, and as, therefore, the assignee was not authorized to take possession of the assigned property, the legal title was still in the assignor, and subject to the process of attachment. The defendant in error, frankly confessing that one of the purposes of the assignment was to defeat the threatened attachment proceedings, insists that it was the policy of the law to favor general assignments, whereby all creditors are provided for alike. We are of opinion that this contention is correct, and that the law providing for a general assignment for the benefit of all the insolvent's creditors should receive a liberal construction. Applying this doctrine to the matter in hand, we find no difficulty in reconciling section 8 of the Act of February 19, with the provisions of the Act of February 20.

Section 9 of the voluntary assignment act requires the assignee to make affidavit touching the nature and value of the effects assigned to him, and allows him

five days within which to give bond to cover this esti-
mated value; and section 8 of the involuntary assign-
ment act declares that the assignment shall not become
operative, and the assignee shall not take possession,
until he has given bond; and section 37 of the volun-
tary assignment act prohibits the issuance of any
attachment against the assignor after the assignment
has been duly made "as in this act contemplated."
Now, referring to the first section of this act, we find
that the only thing required of the assignor is that he
execute an assignment under the formalities required
for the conveyance of real estate.    The assignment
having been "proved, or acknowledged, and certified
and recorded," the legal title passes out of the assignor,
and the property assigned is no longer subject to seiz-
ure under the attachment proceedings.    It is deemed
unnecessary to determine the question as to the precise
status of the legal and equitable titles during the inter-
im between the execution of the deed of assignment
and the qualification of the assignee.    The latter is not
allowed to have possession, and it is provided that the
assignment should not become operative until he exe-
cuted a bond.    The legal title, however, vests in him;
and, if at the date of the conveyance, the assignor is in
possession of the property conveyed, he may be said
thereafter to hold possession in trust for the assignee,
who is authorized to take possession immediately upon
the execution of a satisfactory bond. While, therefore,
strictly speaking, the property can not be said to be
"in custodia legis," which term defines the possession
rather than the title, still, under the operation of that
principle, which declares that a trust shall not be
allowed to fail for want of a trustee, it is safe to say
that the court, by reason of the deed of assignment, is
clothed with all the power necessary for the care and
control of the property assigned; and, on the failure
of the trustee or the assignee to qualify within a reason-

able time, it would, without doubt, be the duty of the court, upon proper application, to appoint a suitable person to administer the trust.   If the assignee should fail to qualify within a reasonable time; or if, without having executed the required bond, he should take possession of the assigned property; or if, after the execution of the deed of assignment, the assignor should exercise a control inconsistent with his changed relations to the property, as for instance, if he should undertake to dispose of it; or in fine, if, by reason of any circumstances connected with the transaction, a creditor should be of the opinion that the assignment was merely colorable, he would be authorized to bring his action under section 37 of the act to have the assignment pronounced void ab initio.

Construing the two acts together we have no difficulty in arriving at the conclusion that it was the purpose of the legislature to prevent the preference of one creditor over another, whether the preference was obtained by favoritism of the debtor or by the vigilance of the creditor.   We are of the opinion, therefore, that the action of the court below in quashing the attachment was correct, and the judgment will therefore be affirmed.

SMITH, C. J., and FALL, J., concur.