BAGCRAFT CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Shirley Bolda, Appellee).

Third District   No. 3—97—0901WC

Opinion filed December 23, 1998.—Rehearing denied February 17, 1999.

Scott A. Carlson and Robert E. Maciorowski, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for appellant.

Steven Seidman, of Monico, Pavich & Spevack, of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Section 11 of the Workers' Compensation Act (Act) precludes an employee from recovering for accidental injuries incurred while participating in voluntary recreational activities, unless the employee was ordered or assigned to participate in the activity. 820 ILCS 305/11 (West 1996). Illinois courts, however, have also long adhered to the traveling employee doctrine, which allows an employee to recover for injuries he sustained during reasonable and expected activity while traveling away from home, even if that activity was recreational in nature. In this case, employer contends that, unless a traveling employee is assigned or ordered to participate in the recreational activities from which the injury arose, section 11 precludes recovery. In effect, employer argues that section 11 abrogates the traveling employee doctrine with respect to recreational activities. We disagree and affirm.

## I. BACKGROUND

Shirley Bolda (claimant), the widow of Richard Bolda (decedent), filed an application for adjustment of claim under the Act, seeking compensation for decedent's death. Decedent was a plant manager for Bagcraft Corporation (Bagcraft), a company that produces paper bags and other flexible packaging supplies. On September 20, 1990, the day of decedent's death, he was 55 years old and had worked for Bagcraft for 12 years.

Rhinelander Paper Company (Rhinelander) is a subsidiary of Wausau Paper Company and was one of Bagcraft's major suppliers of paper. For at least three years prior to September 1990, Rhinelander had invited Bagcraft to send a group of its employees to visit its paper mill and to stay overnight at its company lodge in Wisconsin. Although Marshall Rodin, the former president of Bagcraft, testified that the trips to Rhinelander had no real business importance, the testimony of decedent's colleagues as well as memoranda that were distributed prior to the trip reveal that the trip was for business purposes and that decedent was recommended to go on the trip partly because he was familiar with Rhinelander's product and could contribute to the meetings.

The agenda and activities for this trip were the same as the previous trips. On Thursday morning, September 20, Rhinelander sent its corporate plane to Chicago. Rhinelander's sales people greeted the Bagcraft group at the airport and flew with them to Wisconsin. Upon

arriving in Wisconsin, Rhinelander transported the Bagcraft contingent to its paper mill.

Rhinelander gave the Bagcraft employees a tour of the mill. After the tour, the parties met and discussed general business and quality issues, including baggy sheets of paper and pin holes in the paper. When the meetings concluded around 2:30 p.m., Rhinelander drove the Bagcraft employees to Wausau's lodge, where they spent the remainder of the afternoon and evening.

At the lodge, Bagcraft employees and a couple of Rhinelander's sales people participated in a wide range of recreational activities together, including trapshooting, riding all-terrain vehicles (ATVs), fishing, walking, and hiking. The Bagcraft employees were also free to simply sit around or play pool at the lodge. These activities were available in preceding years and were described in a folder of information that Rhinelander gave the Bagcraft employees before reaching the lodge.

Decedent and James Allen, a coworker, decided to go for an ATV ride. While riding back to the lodge, decedent unexpectedly flew over the handle bars of the ATV and struck a tree. He suffered a severe head injury and died shortly after reaching the hospital.

The accident upset the remainder of the agenda. However, on previous trips, more Rhinelander employees would arrive before dinner. The parties would discuss business issues as well as other topics during and after dinner. On this trip in particular, Rhinelander planned to show a film about Rhinelander after dinner.

The arbitrator found that decedent's fatal injuries arose out of and in the course of his employment. Specifically, the arbitrator found that decedent was a traveling employee and that riding an ATV was a reasonable and foreseeable recreational activity under the circumstances. The Commission affirmed and awarded claimant burial costs and death benefits. The circuit court confirmed the Commission's decision. We have jurisdiction pursuant to Supreme Court Rule 301, allowing appeals from final judgments. 155 Ill. 2d R. 301.

## II. ANALYSIS

■ The traveling employee doctrine is well settled. "Injuries to employees whose duties require them to travel away from home are not governed by the rules applicable to other employees." *Johnson v. Industrial Comm'n*, 278 Ill. App. 3d 59, 64 (1996); *Bailey v. Industrial Comm'n*, 247 Ill. App. 3d 204, 208 (1993); *Howell Tractor & Equipment Co. v. Industrial Comm'n*, 78 Ill. 2d 567, 572 (1980). See *Wright v. Industrial Comm'n*, 62 Ill. 2d 65, 69 (1975); *David Wexler & Co. v. Industrial Comm'n*, 52 Ill. 2d 506, 510 (1972); *Ace Pest Control, Inc. v.*

*Industrial Comm'n*, 32 Ill. 2d 386, 388-89 (1965); *Chicago Bridge & Iron, Inc. v. Industrial Comm'n*, 248 Ill. App. 3d 687, 694 (1993). Under a traveling employee analysis, determination of whether an injury arose out of and in the course of the employee's employment depends on the reasonableness of the employee's conduct at the time of the injury and whether the employer could anticipate or foresee the employee's conduct or activity. *Johnson*, 278 Ill. App. 3d at 64; *Bailey*, 247 Ill. App. 3d at 208; *Howell Tractor & Equipment Co.*, 78 Ill. 2d at 574. See *Wright*, 62 Ill. 2d at 70; *David Wexler & Co.*, 52 Ill. 2d at 510; *Ace Pest Control*, 32 Ill. 2d at 388-89; *Chicago Bridge & Iron*, 248 Ill. App. 3d at 694. Under this approach, Illinois courts have repeatedly held that, even though the recreational activities of a traveling employee fall outside the scope of employment, any injuries incurred during those activities are compensable under the Act as long as the recreational activity and the employee's conduct were reasonable and foreseeable. *Howell Tractor & Equipment*, 78 Ill. 2d at 574; *Wright*, 62 Ill. 2d at 71; *Johnson*, 278 Ill. App. 3d at 64; *Bailey*, 247 Ill. App. 3d at 208. See also *David Wexler & Co.*, 52 Ill. 2d at 510-11. This added protection is afforded under the Act because "[i]t is expected that an employee working out of town will seek some type of recreational activity on his days of rest" (*Wright*, 62 Ill. 2d at 71) and that " '[i]t would be obviously unreasonable and contrary to the intendment of the [Workers'] Compensation Act and its purposes to say that a traveling employee has the protection of the Act only when in the physical act of performing [her] duties and only in the course of a normal business day' " (*Wright*, 62 Ill. 2d at 71, quoting *Wexler*, 52 Ill. 2d at 511).

In this case, Bagcraft does not dispute that decedent was a traveling employee. It did not submit evidence that decedent's conduct of riding an ATV was unreasonable or unanticipated. Nor does it make any such argument on appeal. Instead, Bagcraft contends that section 11 bars recovery because decedent was injured while voluntarily participating in a recreational activity. In essence, Bagcraft's argument is that section 11 abrogates the common law traveling employee doctrine as it applies to recreational activities. Although Illinois courts have not addressed this issue, we conclude for the following reasons that section 11 has no application to traveling employees.

■ The judiciary will not interpret a statute in a manner that will abrogate the common law unless such intent is clearly gleaned from the language of the statute. *Malfeo v. Larson*, 208 Ill. App. 3d 418, 424 (1990). Consequently, the court strictly construes a statute in derogation of the common law to ensure that any changes to the common law are clearly expressed by the language of the statute or that the changes are the clear and necessary implication of the language. *Mal-*

*feo,* 208 Ill. App. 3d at 424; see *In re Petition of K.M.,* 274 Ill. App. 3d 189, 194 (1995), quoting *American Ambassador Casualty Co. v. City of Chicago,* 205 Ill. App. 3d 879, 884 (1990) ("a 'court has no right to read into the statute words that are not found there either by express inclusion or by fair implication' "). The court also strictly construes statutes in derogation of the common law in favor of persons who are subject to their operation. *In re Illinois Bell Switching Station Litigation,* 161 Ill. 2d 233, 240 (1994). Moreover, it is well established that " '[w]here statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law.' " *Burrell v. Southern Truss,* 176 Ill. 2d 171, 176 (1997), quoting *People v. Hinkman,* 163 Ill. 2d 250, 262 (1994).

■ Section 11 provides in pertinent part:

"Accidental injuries incurred while participating in voluntary recreational programs including but not limited to athletic events, parties and picnics do not arise out of and in the course of the employment even though the employer pays some or all of the cost thereof. This exclusion shall not apply in the event that the injured employee was ordered or assigned by his employer to participate in the program." 820 ILCS 305/11 (West 1996).

The language of section 11 is unambiguous. It forecloses recovery where an injury is sustained during, but not limited to, athletic events, parties, and picnics. 820 ILCS 305/11 (West 1996). There is no language, however, evincing an intent on the part of the legislature to abrogate the traveling employee doctrine. The legislative history is equally devoid of any indication that section 11 applies to the traveling employee situation. Rather, the only substantive mention of section 11 was that "[i]t limited the recreational liability when a person was playing for a company *** recreational team." 81st Ill. Gen. Assem., Senate Proceedings, June 25, 1980, at 445-46 (statement of Senator Bruce).

■ We assume that the legislature enacted section 11 with knowledge of the traveling employee doctrine as it has evolved in the common law. *Burrell,* 174 Ill. 2d at 176. As early as 1968, Illinois courts applied the traveling employee doctrine to cases similar to the instant case, where the employee is away from home on a business trip and is injured while engaged in a recreational activity. See, *e.g., Johnson,* 278 Ill. App. 3d 59 (injuries sustained after falling off a yacht while on a business trip in Mexico held compensable); *Wright,* 62 Ill. 2d 65 (death held compensable where employee was killed on highway six miles from motel although employee may have been engaged in a private outing); *David Wexler & Co.,* 52 Ill. 2d 506 (even if traveling employee may have been returning from a golf outing when he died in an

automobile accident, court found decedent's death was still compensable as it was reasonable that decedent would seek recreation while away from home on a legal holiday); *U.S. Industries Production Machine Division v. Industrial Comm'n*, 40 Ill. 2d 469 (1968) (applying the traveling employee analysis, but denying compensation on the basis that employee's midnight pleasure drive in unfamiliar, mountainous terrain was not reasonably expected by employer). Without specific language directing application of section 11 to the traveling employee scenario, we cannot conclude that the legislature intended to abrogate an entire body of case law. We thus conclude that the proper analysis requires application of the traveling employee doctrine and not section 11.

■ In this case, there is ample evidence to support the Commission's determination that decedent was a traveling employee. One will be deemed a traveling employee where he is required to travel away from home to perform his employment-related duties. *Bailey*, 247 Ill. App. 3d at 208. Here, five of decedent's colleagues testified that the Rhinelander trip was for business purposes; only the former president of Bagcraft said it was not. Testimony established that the trip was an opportunity to review current business conditions as well as to continue building a close relationship with Rhinelander. According to Bagcraft employees, Bagcraft believed that the development of a strong relationship was important to Bagcraft primarily because, at that time, Rhinelander was one of Bagcraft's top five paper suppliers in terms of volume and that a strong relationship would yield the best possible value from each purchase. More importantly, a memorandum distributed prior to the excursion confirmed that it was a business trip, stating in part that "[t]he purpose of [the] trip is to review our current business, and correct any technical, quality or pricing issues as well as to discuss new business." Other memoranda and testimony further reflect that decedent was selected because he was familiar with Rhinelander's product and could contribute to the meetings. Moreover, the meetings at Rhinelander related directly to Bagcraft and Rhinelander's business relationship. The participants discussed general business during the meetings as well as quality issues, including Bagcraft's complaint about receiving baggy sheets of paper or paper with pin holes. Although personal pleasure was a byproduct of participating in the Rhinelander excursion, it is apparent from the record that decedent would not have gone on the trip but for his employer's request. As such, there was ample evidence from which to conclude that decedent was on a business trip and that the traveling employee analysis was applicable to this case.

Given that the traveling employee doctrine applies to the instant

case, the proper test for determining whether decedent's death arose out of and in the course of his employment is whether his conduct was reasonable and anticipated by Bagcraft. As to the "reasonableness" prong, all the record indicates is that, while returning to the lodge, decedent flew over his handle bars and struck a tree. There is nothing to suggest that decedent's conduct was unreasonable at the time of the accident; nor can we say that riding an ATV is unreasonable *per se*. As to the "anticipated" prong, the evidence shows that Bagcraft knew or should have known that ATV riding was among the recreational options at the Rhinelander lodge. Not only did Bagcraft employees ride the ATVs on previous trips, but Rhinelander distributed information packets on each trip describing the recreational activities available at the lodge. As such, we find that the Commission's conclusion that decedent's conduct was reasonable and anticipated by Bagcraft is not against the manifest weight of the evidence.

In so ruling, we reject Bagcraft's contentions that our decision in *Kozak v. Industrial Comm'n*, 219 Ill. App. 3d 629 (1991), requires a different result. In *Kozak*, decedent traveled to Houston to play in an intercorporation tennis match that was organized for the purpose of selecting a team to represent employer in a national tennis championship. In the course of playing tennis, decedent suffered a fatal heart attack. Lacking any indication that decedent was traveling to Houston for any purpose other than to participate in a tennis tournament, we affirmed the Commission's application of section 11 and found that his death did not arise out of and in the course of his employment. *Kozak*, 219 Ill. App. 3d at 634.

The distinction between the instant case and *Kozak* is clear and outcome determinative. Here, the Commission found that decedent's trip was for a business-related purpose whereas in *Kozak* the Commission found that decedent's trip was for the sole purpose of participating in a tennis tournament. Accordingly, *Kozak* is distinguishable and provides no support for Bagcraft's contentions.

## III. CONCLUSION

Therefore, for the foregoing reasons, we affirm the circuit court's confirmation of the Commission's decision.

Affirmed.

McCULLOUGH, P.J., and HUTCHINSON, HOLDRIDGE, and RARICK, JJ., concur.