2001-NMCA-039

27 P.3d 1011

David Simon CHAVEZ, Worker–Appellee,

v.

ABF FREIGHT SYSTEMS, INC., Employer–Appellant.

Jodee A. Sindelar, as Personal Representative Of the Estate of Allen Jenkins, The Deceased, Worker–Appellee,

v.

ABF Freight Systems, Inc., Employer–Appellant,

v.

Renee Jenkins, As Mother and Guardian of Stefanie Jenkins and Zachary Jenkins, the minor children of the deceased worker, Appellees,

v.

Jodee Sindelar, Widow and as Mother and Guardian of Anna Jenkins and Sara Jenkins, the minor children of the deceased worker, Appellees.

Nos. 21,000, 21,036.

Court of Appeals of New Mexico.

May 29, 2001.

Kelly A. Genova, Victor P. Montoya, Civerolo, Gralow & Hill, P.A., Albuquerque, NM, for Appellant.

David F. Cargo, Albuquerque, NM, for Appellee David Simon Chavez.

Gerald A. Hanrahan, Albuquerque, NM, for Appellee Jodee Sindelar.

Mark D. Jarner, Los Lunas, NM, Guardian Ad Litem for Appellees Stefanie Jenkins and Zachary Jenkins.

*OPINION*

ROBINSON, Judge.

{1} In these workers' compensation cases, we apply the "traveling-employee rule" announced in *Ramirez v. Dawson Prod. Partners, Inc.*, 2000–NMCA–011, ¶¶ 11–20, 128 N.M. 601, 995 P.2d 1043. We consolidate these cases on our own motion because they involve similar facts and a common legal issue. Both employees are truck drivers employed by ABF Freight Systems, Inc. (ABF). Both were dispatched from Albuquerque to Weatherford, Oklahoma, and both took federally-mandated eight-hour rest breaks at a motel designated and paid for by ABF. In the first case, Mr. David Simon Chavez (Chavez) was injured during the rest break when he tried to move the phone closer to the bed for his wake-up call. The phone cord was trapped under a dresser, so he lifted the dresser to free the cord, and tore his biceps tendon.

{2} In the second case, Mr. Allen Jenkins (Jenkins) was fatally injured when he went for a walk while waiting to drive an ABF

truck back to Albuquerque, and was struck by a car just over a mile from the motel.

{3} The workers' compensation judge (WCJ) awarded benefits in both cases. ABF appeals both awards claiming that neither injury is compensable under New Mexico's workers' compensation law. We hold that the traveling-employee rule requires coverage, and affirm.

## Facts

{4} ABF dispatches Albuquerque drivers to Weatherford, Oklahoma, where drivers stay at a motel that also serves as a relay station. An employee at the motel coordinates the transfer of trucks and serves as a dispatcher for ABF. Albuquerque drivers transfer trucks to other ABF drivers who are usually heading east, and ABF drivers heading west transfer trucks to drivers returning to Albuquerque. After the approximately four-hundred-eighty-mile trip from Albuquerque to Weatherford, drivers are required by federal law to take an eight-hour rest break. The motel used by the drivers is designated and paid for by ABF. Because of a union contract ABF cannot require the drivers to stay in the motel and cannot dictate how the drivers spend their rest break. In these cases, however, both drivers took their rest breaks in the motel designated by ABF.

{5} Mr. Chavez was dispatched by ABF to Weatherford, Oklahoma. He left Albuquerque at approximately 6:00 p.m. on March 25, 1999, and arrived in Weatherford at about 2:45 a.m. the next day. He checked into the designated motel for his required eight-hour rest break. Chavez had requested a wake-up call for some time between 6:00 and 7:00 a.m. He awoke on his own before 6:00 a.m., and wanted to go back to bed for awhile. The phone was not next to the bed, but was on a dresser some distance away, and he wanted to have the phone by the bed. When he tried to move the phone closer, he noticed the cord was trapped by the dresser. He lifted the dresser to free the cord, tearing his biceps tendon.

{6} Mr. Jenkins was dispatched to Weatherford on September 21, 1998, and arrived about 12:45 a.m. on September 22. He checked into the designated motel for his rest break. At 8:45 a.m., he was ready to drive an ABF truck back to Albuquerque, and his rest break was over. He was informed that because there were other drivers ahead of him, he would not be assigned a truck until approximately 12:30 p.m. Jenkins had been walking to improve his health and to refresh himself for long drives, so he decided to go for a four-mile walk while waiting for his truck assignment. He walked along old Route 66, a lightly-traveled frontage road. ABF drivers regularly walked along Route 66, and ABF's line supervisor testified that walking was a reasonable activity for drivers. ABF knew drivers regularly walked the route, though ABF could not prohibit drivers from walking, because the union contract prohibited ABF from dictating what drivers could do during their rest break. Jenkins was killed about 1.3 miles from the motel when a car veered off the road and struck him.

## 1. Standard of Review.

{7} We review the whole record to determine whether the factual findings are supported by substantial evidence. *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 126–130, 767 P.2d 363, 365–369 (Ct.App. 1988). "[W]here the historical facts of the case are undisputed, ... whether [an] accident arose out of the employment is a question of law" reviewed de novo. *Ramirez*, 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 14 (quoting *Cox v. Chino Mines/Phelps Dodge*, 115 N.M. 335, 337, 850 P.2d 1038, 1040 (Ct.App.1993)).

## 2. The Traveling Employee Rule.

{8} Under the "going-and-coming rule," workers are generally not eligible for workers' compensation if the injury occurs while traveling between home and work. NMSA 1978, § 52–1–19 (1987); *Ramirez*, 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 7. However, the traveling-employee rule is an exception to this rule. It recognizes that employees who work on the road, like the truck drivers in this case, should be treated differently. *Ramirez*, 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 9. " 'The gen-

eral rule is that an employee whose work entails travel away from the employer's premises is, in most circumstances, under continuous workers' compensation coverage from the time he leaves home until he returns.' " *Id.* ¶ 11 (quoting *Voight v. Rettinger Transp., Inc.,* 306 N.W.2d 133, 136 (Minn. 1981)). "Thus, injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable." 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 25.01, at 25–2 (2000).

{9} Traveling employees are covered while engaged in a wide variety of activities. "The rationale behind the traveling-employee rule is that an employee who is required to travel away from home is furthering the business of his employer as he eats, sleeps, and performs other acts necessary to his health and comfort during his travels." *Ramirez,* 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 12 (quoting *Olinger Constr. Co. v. Mosbey,* 427 N.E.2d 910, 915 (Ind.Ct.App.1981)). The rule recognizes that a traveling employee is subjected to " 'hazards he or she would otherwise have the option of avoiding, [and that] the hazards of the route become the hazards of the employment.' " *Ramirez,* 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 12 (quoting *Appeal of Griffin,* 140 N.H. 650, 671 A.2d 541, 544 (N.H.1996)).

### 3. "Arising Out of and in the Course of" Employment.

{10} As we recognized in *Ramirez,* however, a traveling employee is not covered for every conceivable injury he or she might receive while traveling. The employee must demonstrate that the injury " 'arose out of and in the course of employment.' " *Id.* ¶ 14 (quoting *Jensen v. Indus. Comm'n,* 305 Ill. App.3d 274, 238 Ill.Dec. 468, 711 N.E.2d 1129, 1132–33 (Ill.App.Ct.1999)). " '[I]n the course of' . . . refers to the time, place, and circumstances under which the injury occurred." *Id.* ¶ 14 (quoting *Gutierrez v. Amity Leather Prods. Co.,* 107 N.M. 26, 29, 751 P.2d 710, 713 (Ct.App.1988)). An injury arises out of employment if it is " 'caused by a risk to which the plaintiff [was] subjected by reason of his employment.' " *Id.* An inju-

ry arises out of employment if the claimant " 'was performing acts the employer instructed the claimant to perform, acts incidental to the claimant's assigned duties, or acts which the claimant had a common law or statutory duty to perform.' " *Id.* ¶ 14 (quoting *Jensen,* 238 Ill.Dec. 468, 711 N.E.2d at 1132). New Mexico cases have also held that an injury arises out of employment if it is "reasonably incident" to the employment. *Brundage v. K.L. House Constr. Co.,* 74 N.M. 613, 617, 396 P.2d 731, 733 (1964); *Chavez v. Mountain States Constructors,* 1996–NMSC–070, ¶ 27, 122 N.M. 579, 929 P.2d 971.

{11} *Ramirez* establishes several other factors to be used in determining whether the injury arises out of and in the course of employment. These are whether the injury " 'takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it.' " *Ramirez,* 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 16 (quoting *Kloer v. Municipality of Las Vegas,* 106 N.M. 594, 597, 746 P.2d 1126, 1129 (Ct.App.1987)). Other factors to be considered are whether the activity was reasonable and foreseeable; whether the injury occurred during a distinct departure from employment for a personal errand; whether the activity was conducted in an unreasonable or unforeseeable manner; and whether the activity giving rise to the injury conferred some benefit on the employer. *Ramirez,* 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶¶ 15–17. "The benefit to the employer need not be pecuniary, and may be as intangible as a well-fed and well-rested employee." *Id.* ¶ 17.

{12} These factors are considered in order to determine whether the injury is reasonably incidental to employment so that it is fair to hold the employer responsible for the employee's injury. They represent an attempt to draw the line between conduct reasonably related to employment and conduct that is " 'so foreign to and removed from [the employee's] usual employment as to constitute an abandonment thereof.' " *Id.* (quoting *Evans v. Workmen's Comp. Appeal Bd.,* 664 A.2d 216, 219 (Pa.Cmwlth.Ct.1995)).

{13} The traveling-employee rule broadly defines what is reasonably incidental to employment. Benefits have been granted to employees injured during a wide variety of leisure and other activities. *See Proctor v. SAIF Corp.*, 123 Or.App. 326, 860 P.2d 828, 831–32 (1993) (awarding benefits for injuries suffered during a basketball game); *Bagcraft Corp. v. Industrial Comm'n*, 302 Ill.App.3d 334, 235 Ill.Dec. 736, 705 N.E.2d 919, 923–24 (1998) (awarding benefits to an employee on a business trip who was killed while riding an ATV); *Peterson v. Industrial Comm'n*, 16 Ariz.App. 41, 490 P.2d 870, 871–73 (Ariz.Ct. App.1971) (awarding benefits where employee got his head stuck in the slats of the bed and died).

■ {14} We first address the Chavez case, in which ABF argues that the injury did not arise out of or in the course of employment because of the unusual way it occurred. But accidents frequently occur in unusual and unexpected ways. *Bufalino v. Safeway Stores, Inc.*, 98 N.M. 560, 565, 650 P.2d 844, 849 (Ct.App.1982) (stating that an accident is an untoward event that is not expected or designed). In holding that benefits were properly awarded to Chavez, we rely on the *Ramirez* factors and the basic rationale underlying the traveling-employee rule. We do not believe that an employee who is injured while traveling for his employer should be denied benefits solely because the injury occurred in an unusual way. In holding that Chavez' injury is covered, we focus more on the fact that as a truck driver Chavez was expected to travel. He was expected to stay in motel rooms and was required by law to take an eight-hour break. He was precisely where he was supposed to be-in the motel room, taking his rest break. He was sleeping and the activity that caused his injury was incidental to sleeping, and awakening on time to resume the return trip for his employer. There are no facts suggesting a distinct deviation from the business purpose of his trip. *See Savin Corp. v. McBride*, 134 Or.App. 321, 894 P.2d 1261, 1263–64 (1995) (awarding benefits for injury suffered during trip to the bank because the departure was minimal and necessitated by travel where employee traveled to job site and learned her work order had been can-

celed and she detoured a few blocks to stop at a bank). Attempting to free a phone cord, while staying in a motel, does not approach the facts of cases that have found the employee's conduct such a distinct departure from employment that benefits were denied. *See, e.g., Ramirez*, 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 20 (denying benefits to claimant because he was not required to go along on the trip, but only went to keep his fellow employees company); *Capitol Int'l Airways, Inc. v. Workmen's Comp. Appeal Bd.*, 58 Pa.Cmwlth. 551, 428 A.2d 295, 298 (Pa.Cmwlth.Ct.1981) (denying benefits to flight engineer on layover who expressed desire to follow a woman and later fell to his death from a hotel that was not his); *Williams v. Atlanta Family Rests., Inc.*, 204 Ga.App. 343, 419 S.E.2d 328, 330 (1992) (denying benefits to claimant who instead of riding back to the hotel with coworkers, decided to ride with people she had just met and was sexually assaulted).

{15} *Ramirez* holds that the injury must "occur during the commission of an activity that is reasonable and foreseeable both as to its nature and manner of commission, and must be of some benefit to the employer." *Ramirez*, 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 17. Injuries can occur while traveling in many ways, including injuries resulting from coping with conditions in a motel room. Employers may reasonably anticipate that traveling employees can be injured at motels by falling, slipping, or dealing with foreign surroundings. Here, we are mindful of *Ramirez'* comment that " '[w]here employment requires travel, the employee is consequently exposed to hazards [he or] she would otherwise have the option of avoiding.' " *Id.* ¶ 12 (quoting *Griffin*, 671 A.2d at 544). Had Chavez been in his own home, a wake-up call would not have been necessary, and presumably the furniture would have been arranged to suit his purposes. He was on the road, serving his employer's interests, and it was the fact that he was on the road that exposed to him to hazards he would not have faced at home.

{16} ABF argues that it was not necessary to move the phone closer to the bed. But many covered activities performed by travel-

ing employees are not necessary. It is not necessary for employees to play basketball or to drive an ATV, but courts have held that these activities are covered because some leeway is given to traveling employees. *See Proctor,* 860 P.2d at 831–32; *Bagcraft,* 235 Ill.Dec. 736, 705 N.E.2d at 923–24. The test is one of reasonableness. We believe it is reasonable for someone to move the phone closer to the bed to be able to quickly silence a wake-up call. ABF argues that Chavez should not have moved the furniture, and could have called the front desk for help, or could have called ABF, who in turn would have called the hotel. Those were options, but we do not believe Chavez' attempt to free the phone cord to move the phone closer to the bed is so unreasonable that he should be denied compensation.

{17} The employer has argued that it obtained no benefit from Chavez' act of moving the phone. We do not believe the purposes of the Workers' Compensation Act, or of the traveling-employee rule, are satisfied by such a narrow analysis. As we noted earlier, our courts look at a wide variety of factors to determine whether an injury arises out of and in the course of employment. Here, it is more appropriate to focus on the fact that the employee was resting in his motel room when he was injured. The break not only benefits the employer by ensuring a rested employee capable of safely operating its trucks, but benefits the employee and the public, as well. Chavez was sleeping, and his attempt to free the phone cord was incidental to sleeping and staying in a motel. We are persuaded that Chavez' injury was caused by a risk from traveling, that it was incidental to his assigned duties, and that it took place " 'within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it.' " *Ramirez,* 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 16 (quoting *Kloer,* 106 N.M. at 597, 746 P.2d at 1129).

{18} Nor do we accept ABF's argument that Chavez was off duty and was not being paid during the rest period. As a traveling employee, Chavez is entitled to coverage; it was his business travel that required the motel stay. ABF's argument suggests he would only be entitled to coverage while he is actually driving the truck. Such a ruling would be inconsistent with the purposes of the traveling-employee rule. *Ramirez,* 2000–NMCA–011, ¶ 13 ("[G]iven the rationale behind the [traveling-employee] exception, it would make little sense to provide coverage for traveling employees only while they are actually performing the duties of their jobs.").

{19} ABF relies on an Ohio case, *Lewis v. TNT Holland Motor Express, Inc.,* 129 Ohio App.3d 131, 717 N.E.2d 378, 380 (1998), which holds that a truck driver who fell in a motel room shower could not recover benefits. We do not agree with *Lewis.* The Ohio court focused on whether the employer could have prevented the injury and held that falling in a shower is not a risk incident to truck driving. We do not agree that the employer's ability to prevent the injury is dispositive. The employer normally will not be able to control the premises in which the traveling employee stays. The more important consideration should be whether the injury is reasonably incidental to employment. We also note that another court has come to the opposite conclusion from *Lewis,* holding that a fall in a motel shower is covered. *See Lenzner Coach Lines v. Workmen's Comp. Appeal Bd.,* 632 A.2d 947–50, 158 Pa.Cmwlth. 582 (1993). Under the facts of this case, we hold Chavez' injury was reasonably incidental to employment.

{20} Turning to the Sindelar case, we hold that Jenkins' injury is also reasonably incidental to employment and benefits were properly awarded under *Ramirez.* ABF should expect that its drivers might exercise during their rest break or while they await trucks for the return trip to their home base. *Ramirez,* 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 13; *see also Proctor,* 860 P.2d at 831–32 (awarding benefits to an employee who was injured playing basketball); *Bagcraft Corp. v. Industrial Comm'n.,* 302 Ill.App.3d 334, 235 Ill.Dec. 736, 705 N.E.2d 919, 923–24 (1998) (awarding benefits where employee died while engaging in a recreational activity while traveling); *McCann v. Hatchett,* 19 S.W.3d 218, 221–22 (Tenn.2000)

(awarding benefits for injuries sustained during recreational activity undertaken while traveling). Additionally, cases routinely award benefits to traveling employees who are struck by vehicles while walking. *See Roadway Express, Inc. v. Workmen's Comp. Appeal Bd.,* 110 Pa.Cmwlth. 619, 532 A.2d 1257–60 (1987) (awarding benefits to truck driver where he was required to spend an eight-hour layover walked to a restaurant and was killed while crossing the road on his way back to the motel); *Shelton v. Standard Ins. Co.,* 389 S.W.2d 290, 293–94 (Tex.1965) (awarding benefits to truck driver struck by a car as he crossed the road from his motel to a restaurant); *Blatter v. Missouri Dep't of Soc. Servs.,* 655 S.W.2d 819, 825–26 (Mo.Ct. App.1983) (awarding benefits to employee struck and killed by a car while walking back to the hotel). Jenkins' walk was a reasonable and foreseeable activity, and ABF benefits from having healthier, more refreshed drivers. *See Ramirez,* 128 N.M. 601, 995 P.2d 1043, 2000–NMCA–011, ¶ 13. We are not persuaded by ABF's argument that Jenkins was not healthier or more refreshed because he complained that the walks made his back, leg, and neck hurt. The WCJ reasonably found that the walks benefitted Jenkins and ABF. Under the circumstances in this case, Jenkins' injury arose out of and in the course of employment, and workers' compensation benefits were properly awarded under the traveling-employee rule.

{21} ABF has not cited us to any case in which benefits were denied on similar facts. ABF's cases involve employees who were not traveling, or other fact patterns that are not analogous to this case. ABF relies on *Martinez v. Fidel,* 61 N.M. 6, 9, 293 P.2d 654, 655 (1956), where an employee left her place of work and fell on ice on a public way, to argue that Jenkins was off duty, on a public way. ABF relies on *Meeks v. Eddy County Sheriff's Dep't,* 118 N.M. 643, 645–46, 884 P.2d 534, 536–37 (Ct.App.1994), a case in which benefits were denied to an employee who was injured while exercising on his own to improve his work performance. We do not consider *Martinez* and *Meeks* to be persuasive in this setting because they do not involve traveling employees.

{22} ABF also argues that *Ramirez* does not apply at all, or seeks to distinguish it. ABF claims that *Ramirez* does not apply because *Ramirez* deals with traveling employees who performed work once they arrived at their destination. ABF attempts to distinguish *Ramirez,* arguing that here the employees worked while driving, but performed no work once they reached the destination. We reject this argument. The point is that the employees' work involves travel. The purpose of the traveling-employee rule would hardly be served by the distinction drawn by ABF and would leave large gaps in which truck drivers and other traveling employees would not be covered, even though they suffer injuries reasonably incidental to their job activities.

{23} ABF also seeks to distinguish *Ramirez,* arguing that it was based on a "contract" between the employees and the employer, in which the employer agreed to assume the risk of traveling. ABF once again relies on the union contract to argue that it has not assumed any risk. *Ramirez* contains no such analysis on contracts or assumption of the risk, and we reject the distinction drawn by ABF. ABF's drivers must travel and stay in motels, and it is reasonable for them to exercise while waiting for truck assignments. So long as the employees' conduct giving rise to their injury is reasonably incidental to employment, workers' compensation benefits are properly awarded.

{24} ABF also argues that under the traveling-employee rule it is liable only if it knew of and consented to the activity that resulted in injury. *Ramirez* does not contain this requirement. Walking in these circumstances is reasonably incidental to Jenkins' employment, and whether ABF consented is not dispositive.

{25} ABF relies on the *Lewis* case, discussed above, to argue that Jenkins was not under the control of ABF, that ABF "received no benefit from Jenkins' presence at the scene of his accident," and that Jenkins was walking at the request of his wife, a nurse. As we noted above, we do not find *Lewis* persuasive insofar as it concerns injuries sustained in a motel room. We find it of

no value in addressing an injury resulting from walking while waiting for a truck for the return trip.

### 4. The Union Contract.

{26} In both cases, ABF argues that benefits should be denied because the applicable union contract dictated that ABF had no say over what the employee did during the 8 hour rest break. ABF relies on *Velkovitz v. Penasco Independent School District*, 96 N.M. 577, 578, 633 P.2d 685, 686 (1981) to argue that injuries occurring during a lull in employment are compensable only when the employee is required to perform duties during the lull. ABF argues that since it could not require anything of Jenkins during his break because of the union contract, Jenkins could not be covered. We do not agree. The union contract recognizes that traveling truck drivers are allowed some personal freedom. The central question is, nevertheless, whether the employees' injuries were reasonably incidental to their job activities while they were on the road, regardless of whether they were exercising an element of personal choice at the time of the injuries. As we have discussed, both Chavez and Jenkins suffered injuries which were reasonably incidental to their job activities. The contract only recognizes that traveling truck drivers are allowed some personal freedom. We disagree that the union contract should insulate ABF as a matter of law. Employees should be able to bargain for some freedom during enforced layovers without risk of losing workers' compensation coverage.

{27} ABF also likens these cases to *Cox v. Chino Mines/Phelps Dodge*, where benefits were denied to an employee who sustained injuries from sexual harassment. There, benefits were denied because the company had a written policy against sexual harassment. ABF argues that the union contract here is like Phelps Dodge's written policy against sexual harassment. We do not agree. There is a difference between holding a company liable for workers' compensation benefits based on unauthorized sexual harassment by its employees, as was the case in *Cox*, and holding a company liable for injuries sustained by its truck-driving employee while he or she is staying in a motel room for a mandatory rest break, or while exercising while waiting for another truck to drive. We are not persuaded that the union contract here is like the written policy in *Cox*.

{28} ABF further analogizes the Jenkins' activity to off-duty activity during lunch breaks, which is generally not covered. *See Smith v. City of Albuquerque*, 105 N.M. 125, 129, 729 P.2d 1379, 1383 (Ct.App.1986). It argues that since the union contract precludes it from dictating drivers' activity during their breaks, the mandatory rest break is like a lunch break. We disagree. Traveling truck drivers are not like employees on lunch breaks because they are out of town and forced to stay overnight in motels and other lodging establishments. The traveling-employee rule governs, not the lunch-break rule from *Smith*.

{29} ABF makes a similar argument relying on *Velkovitz v. Penasco Independent School District*, 96 N.M. 577, 578, 633 P.2d 685, 686 (1981), to argue that injuries occurring during a lull in employment are compensable only when the employee is required to perform duties during the lull. ABF argues that since it could not require anything of Jenkins during his break, he should not be covered. We reject this argument, as well, for the same reasons.

### CONCLUSION

{30} The decisions of the WCJ are affirmed.

{31} Furthermore, we remand these cases to the WCJ to award both employees appropriate costs and attorney fees for this appeal under Section 52–1–54.

{32} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Judge, and M. CHRISTINA ARMIJO, Judge.