# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>December 11, 2014</u>

**NO. 33,288**

**IRENE BEGAY,**

Worker-Appellant,

v.

**CONSUMER DIRECT PERSONAL CARE,**
**and AMERICAN CASUALTY CO.,**

Employer/Insurer-Appellee.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Reginald C. Woodward, Workers' Compensation Judge**

Titus & Murphy Law Firm
Victor A. Titus
Farmington, NM

for Appellant

Camp & Elmore, LLC
Christopher T. Elmore
Albuquerque, NM

for Appellees

**OPINION**

**ZAMORA, Judge**

{1}    Irene Begay (Worker) filed for workers' compensation benefits alleging that she was injured while working for Consumer Direct Personal Care (Employer). The workers' compensation judge (WCJ) found that Worker's injury was not sustained during the course and scope of her employment, and did not arise out of her employment, and denied her claim. We affirm.

**BACKGROUND**

{2}    Worker was employed as a personal care attendant for her son, a mentally disabled adult. In 2011, when Worker was injured, she was an employee under the Personal Care Option (PCO) as provided by 8.315.4 NMAC (7/1/2004, as amended through 12/30/2010) (repealed, 2/28/2014).[1] This option, generally paid for through Medicaid, allowed relatives already providing services to Medicaid consumers to receive compensation for some of their work, while also allowing consumers to have someone familiar with them to address their needs. 8.315.4.10 NMAC (12/30/2010).

{3}    Worker was injured on Monday, April 4, 2011. That day she left the house with her family and son around 1:00 p.m. to run errands in Gallup, New Mexico, which is approximately a one-hour drive from her home in Standing Rock, New Mexico. In

_____

[1]Many of the provisions of the Personal Care Option (PCO) have been replaced by Personal Care Services (PCS) which are found in 8.308.12 (NMAC) (1/01/2014).

Gallup, Worker purchased art supplies for her son, took him to lunch, and then dropped him off at a movie. While her son was at the movie, Worker went to a laundromat to wash several of her son's blankets in a commercial sized washing machine. Worker also did some laundry for her mother-in-law. After finishing the laundry, Worker picked her son up from the movies. While driving home at approximately 7:00 p.m., Worker was abruptly attacked by her son, resulting in an injury to her arm.

{4} Worker filed for workers' compensation benefits. After a trial on the merits of Worker's claim, the WCJ found that on the day of her injury, Worker's timesheet verified that she had worked her scheduled hours, from 7:00 a.m. to 2:30 p.m.; Worker knew her errands would take more time than her work schedule permitted; and, pursuant to 8.315.4.9(C) NMAC (12/30/2010), Worker was free to perform services for her son, including laundry, after her scheduled work hours, acting as a mother or a "natural support" rather than an employee.

{5} The WCJ concluded that while doing laundry may have been a service Worker performed as an employee, on the day of her injury, Worker did not perform this task within her scheduled employment hours. The WCJ further concluded that Worker's afternoon activities—taking her son to the movies, going to lunch, doing laundry for her son and her mother-in-law—were not "specific" to her son or to "benefit" her

Employer, but instead were part of a "family" outing that was not part of her employment. The WCJ decided that Worker's injury was not sustained in the course or scope of her employment, and did not arise out of her employment. Worker's complaint was dismissed and this appeal followed.

**DISCUSSION**

**Standard of Review**

{6}     We review factual findings of WCJs under a whole record standard of review. *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926. We give deference to the fact finder where findings are supported by substantial evidence. *Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. "Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision[.]" *Id.* We will not "reweigh the evidence [or] replace the fact finder's conclusions with our own." *Id.*

{7}     To the extent that this analysis involves interpretation of 8.315.4 NMAC (12/30/2010), our review is de novo. *See Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 24, 147 N.M. 583, 227 P.3d 73 ("[I]nterpretation of an administrative regulation is a question of law that we review de novo." (internal quotation marks and citation omitted)).

**Worker's Employment Under the Human Services Department Regulations**

{8}    At the time Worker was injured, her employment was defined and regulated by the Human Services Department's (HSD) administrative regulations. *See* 8.315.4.1 NMAC (12/30/2010). Pursuant to these regulations, Medicaid consumers who required assistance with activities of daily living would qualify to receive PCO services. 8.315.4.9 NMAC (12/30/2010). Managed Care Organizations (MCOs) worked with PCO service providers, such as Employer, to coordinate services for eligible Medicaid consumers. *Id.* MCOs assessed consumers' individual needs to determine the amount and type of PCO services that would be approved for payment through Medicaid. *Id.*

{9}    PCO services were meant to supplement services that consumers already received from "natural supports." 8.315.4.15 NMAC (12/30/2010). In other words, Medicaid would pay for services that a consumer needed and was not already receiving from friends, family, and other members of the consumer's community on a consistent basis. *Id.* PCO consumers could hire a personal care attendant who is a member of their household, however, Medicaid did not cover twenty-four hour a day care or services that the personal care attendant routinely provided as part of the household division of chores, unless those services were specific to the consumer. *Id.*

4

{10} Based on the MCO's assessment of the consumer's needs and the natural supports in place, the PCO service provider and the consumer developed an Individual Plan of Care (IPoC). 8.315.4.20 NMAC (12/30/2010). The consumer's IPoC outlined the services approved for payment through Medicaid as well as the personal care attendant's work schedule. *Id.* Unless otherwise specified, approved PCO services should have been provided in the consumer's residence, and were to be provided during the hours specified in the IPoC. 8.315.4.15(A) NMAC (12/30/2010).

{11} The IPoC developed for Worker's son authorized forty-five hours of services per week. The plan provided for daily assistance with meal preparation, eating, cognitive tasks, hygiene, grooming, bathing, and mobility. Three days a week, Worker's son could receive one hour of "household services" which included house cleaning, washing dishes and laundry, as well as one hour of "support services," which included assistance with shopping, errands, and transportation. Worker's scheduled hours were: Mondays, Tuesdays, and Wednesdays from 7:00 a.m. to 2:30 p.m.; Thursdays from 7:00 a.m. to 1:00 p.m.; and Saturdays and Sundays from 7:00 a.m. to 12:30 p.m. Because Worker cared for her son continuously, the IPoC's specified tasks and schedule are what distinguished the services that she provided on the clock as an employee and those she provided off the clock as a mother and natural caregiver.

5

**The Workers' Compensation Act**

{12} Under the Workers' Compensation Act (WCA), an injured worker is entitled to workers' compensation benefits if "at the time of the accident, the employee is performing service arising out of and in the course of his employment[.]" NMSA 1978, § 52-1-9(B) (1973). "Arising out of and in the course of employment are two distinct requirements." *Schultz ex rel. Schultz v. Pojoaque Tribal Police Dep't*, 2014-NMCA-019, ¶ 8, 317 P.3d 866 (internal quotation marks and citation omitted). However, in order for a claimant to be entitled to compensation, both of the requirements for "arising out of" and "in the course of . . . employment" must be met. *Garcia v. Homestake Mining Co.*, 1992-NMCA-018, ¶ 6, 113 N.M. 508, 828 P.2d 420 (internal quotation marks and citation omitted).

{13} In determining whether an injury arose out of the worker's employment, we look at the cause of the accident. *Id.* ¶ 7; *see Velkovitz v. Penasco Indep. Sch. Dist.*, 1981-NMSC-075, ¶ 2, 96 N.M. 577, 633 P.2d 685 ("For an injury to arise out of employment, the injury must have been caused by a risk to which the injured person was subjected in his employment."); *Flores v. McKay Oil Corp.*, 2008-NMCA-123, ¶ 10, 144 N.M. 782, 192 P.3d 777 ("The term 'arising out of' the employment denotes a risk reasonably incident to claimant's work." (citation omitted)). Injuries "arising out of" employment typically include those occurring during acts the worker was

specifically instructed to perform by the employer and acts incidental to the worker's assigned duties. *Schultz*, 2014-NMCA-019, ¶ 8 (internal quotation marks and citation omitted).

{14}     The second requirement under the WCA is that the injury occurs "in the course of employment, relates to the time, place, and circumstances under which the accident takes place." *Velkovitz*, 1981-NMSC-075, ¶ 2. We consider whether the injury "takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Chavez v. ABF Freight Sys., Inc.*, 2001-NMCA-039, ¶ 11, 130 N.M. 524, 27 P.3d 1011 (internal quotation marks and citation omitted). "If the worker was not reasonably involved in fulfilling the duties of his employment at the time of his injury, he was not acting within the course of his employment." *Flores*, 2008-NMCA-123, ¶ 10.

{15}     Due to the unique nature of Worker's employment, including the fact that her employment duties overlapped significantly with the services she provided as a mother or natural support, most of the factors traditionally considered in the "arising out of employment" and "in the course of employment" analyses do not inform our analysis here. When Worker was providing services to her son, the tasks she performed, the places she may have reasonably been, and the risks incidental to her

7

caregiving were much the same whether she was providing services as an employee or as a natural support. On the day she was injured, Worker provided services to her son that could have been provided in either of her two roles. As a result, Worker's schedule, as set forth in the IPoC, becomes the determinative factor as to whether the "arising out of employment" and "in the course of employment" requirements were met.

{16}     On the day of the accident, Worker was scheduled to work from 7:00 a.m. to 2:30 p.m. However, Worker stated that she was not bound by this schedule. According to Worker, she had difficulty accomplishing all of her employment tasks within her scheduled hours because her son woke up relatively late. She testified that when she reported this to her program coordinator, she was instructed to submit her timesheets, reflecting the hours approved in the IPoC, even if she actually performed her tasks outside of her scheduled hours. Worker contends that she believed she would be paid for seven-and-a-half hours a day, no matter when the actual work was done.

{17}     The WCJ considered and rejected this claim and concluded that Worker's injury did not "arise from" or occur "in the course of employment." "Because weighing evidence and making credibility determinations are uniquely within the province of the trier of fact, we will not reweigh the evidence nor substitute our

8

judgment for that of the WCJ, unless substantial evidence does not support the findings." *Dewitt*, 2009-NMSC-032, ¶ 22.

{18} Here, Worker's testimony about working outside her scheduled hours was directly contradicted by her program coordinator, who testified that Worker never informed her about problems with the schedule but that Worker had been advised to follow her schedule as set forth in the IPoC. Worker also received documentation, including an Employee Handbook, which provided that she was to work only the hours approved in the IPoC and to track her actual hours worked. Moreover, we note if Worker was working outside her scheduled hours, she would have been in direct violation of 8.315.4.15(A) NMAC (12/30/2010) that requires that PCO services be within the hours specified in the IPoC. We conclude that the evidence is sufficient to support the WCJ's conclusion that Worker's injury did not "arise from" or occur "in the course of employment."

**The Traveling Employee and Special Errand Exceptions Do Not Apply**

{19} Worker argues that because she began her trip to Gallup intending to perform work-related duties and while still on the clock, she was a traveling employee on a special errand for Employer. Worker's reliance on the traveling employee and special errand doctrines is misplaced.

9

{20}     Under the WCA, workers injured while traveling between home and work are generally not entitled to compensation. *See* NMSA 1978, § 52-1-19 (1987) (excluding from compensation "injuries to any worker occurring while on his way to assume the duties of his employment or after leaving such duties[ ]"). "In this respect, the [WCA] codifies what is commonly known in workers' compensation law as the 'going-and-coming rule.'" *Ramirez v. Dawson Prod. Partners, Inc.*, 2000-NMCA-011, ¶ 7, 128 N.M. 601, 995 P.2d 1043. "This rule arises from the recognition that, while admittedly the employment is the cause of the workman's journey between his home and [his job], it is generally taken for granted that workmen's compensation was not intended to protect him against all the perils of that journey." *Id.* (internal quotation marks and citation omitted).

{21}     We have acknowledged exceptions to the going-and-coming rule where workers' employment requires travel beyond a typical commute. *See Avila v. Pleasuretime Soda, Inc.*, 1977-NMCA-079, ¶ 16, 90 N.M. 707, 568 P.2d 233 ("The 'special errand' rule is an exception to the 'going[-]and[-]coming' rule."); *see also Ramirez*, 2000-NMCA-011, ¶ 11 (acknowledging that "[t]raveling employees . . . for whom travel is an integral part of their jobs, such as those who travel to different locations to perform their duties," are not subject to the "going-and-coming rule" (internal quotation marks and citation omitted)).

{22} The traveling employee exception is inapplicable under the facts of this case. A traveling employee is defined as "[a]n employee who is taken away from home by his or her employment and who of necessity must eat and sleep away from home in order to further the employer's business [and who] may be considered to be in the continuous employment of the employer, day and night." *Id.* ¶ 11 (internal quotation marks and citation omitted). However, "[a] traveling employee is not simply one who must travel significant distances to and from his job[.]" *Id.* For traveling employees, "travel is an integral part of their jobs," such that they "travel to different locations to perform their duties," differentiating them from "employees who commute daily from home to a single workplace." *Id.* (internal quotation marks and citation omitted). Here, the IPoC provides that Worker may assist with transportation, however, Worker is not required to be away for days at a time as part of her employment. In fact, such work related travel would contradict both the IPoC, which allows for occasional, incidental travel, and 8.315.4.15(A) NMAC (12/30/2010), which provides that unless otherwise specified, PCO services should be provided in the consumer's residence. Moreover, even where the traveling employee exception does apply, the employee "must still demonstrate that the injury arose out of and in the course of employment." *Ramirez*, 2000-NMCA-011, ¶ 14 (internal quotation marks and citation omitted). Worker has failed to make that showing in this case.

11

{23}     The special errand exception is inapplicable here. The special errand exception applies only where "the travel was required at the direction of the employer." *Avila*, 1977-NMCA-079, ¶ 16. In *Avila*, the employer required employee to make a bank deposit after business hours every day. *Id.* ¶¶ 2, 12-13. This Court held that the employee "was at work at the place where her employer's business required her to be. It was incident to the business." *Id.* ¶ 24. From the time the employee deviated from her normal route home to go to the bank until she returned to that route "beginning her trip home, [she] was acting in the scope and in the course of her employer's business." *Id.* In the present case, the IPoC outlining Worker's employment duties did not require Worker to travel in order to perform laundry services. Worker provided no evidence that her trip to Gallup was required by Employer or that it was incident to Employer's business as opposed to being incident to her natural care-taking role.

{24}     Finally, Worker argues that the HSD regulations requiring adherence to the IPoC are not binding in this case because Employer required her to go on special errands to complete laundry services, but failed to include this required errand in the IPoC. Because we find that Worker was not on a special errand when she was injured, this argument is moot and we need not address it here.

**CONCLUSION**

{25}     For the foregoing reasons we affirm.

12

{26}    **IT IS SO ORDERED.**

_____
**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**J. MILES HANISEE, Judge**