[Civ. No. 8274. First Appellate District, Division One.—April 26, 1932.]

WILLIAM A. KINNEY, Appellant, v. POSTAL TELE-GRAPH-CABLE COMPANY (a Corporation) et al., Respondents.

William A. Kinney, *in pro. per.*, for Appellant.

Haas & Dunnigan and H. C. Johnston for Respondents.

KNIGHT, J.—The purpose of this action, as stated by plaintiff in the opening paragraph of his complaint, was to recover "damages, actual and punitive, suffered by him at the hands jointly of defendants herein, to-wit: the sum of three hundred thousand dollars ($300,000), for a joint, unlawful, criminal, wilful, oppressive and fraudulent confederation together and conspiracy on the part of all and each of the defendants herein directed against complainant and aimed, designed and intended to harass and oppress him and to do him intentional wrong and destroy and injure and dissipate his property and to deprive him of credit and the means of obtaining a livelihood, and to acquire his property without consideration or return, by said means." Three of the ten defendants sued, namely, Postal Telegraph-Cable Company, a corporation, its Los Angeles superintendent and manager, W. W. Morrison and C. A. Holzer, interposed a general demurrer to the complaint, and it was sustained without leave to amend. Pursuant to the order so made judgment of dismissal was entered, from which plaintiff has appealed. The remaining seven defendants are residents either of New York or Canada, and so far as the record shows were not served with summons.

The action was filed and the appeal is presented by appellant *in propria persona.* The complaint and the exhibits attached thereto cover some 213 pages of the printed transcript. As stated by appellant in his brief, he "proceeds, at great length, by a recital of facts, to elucidate and explain the details of the conspiracy"; but an examination of the pleading shows that most of the matters set forth therein related to a controversy then existing between appellant and others which is wholly foreign to any charge made against these respondents. It appears therefrom that pursuant to an arrangement entered into between appellant and the defendant Peterson, a real estate broker residing in New York, the latter organized a corporation

under the laws of Delaware, known as the Nova Scotia Live Stock & Development Company, Ltd., for the purpose of acquiring from the defendant Canada Permanent Mortgage Corporation of Halifax, Nova Scotia, under an installment contract, for a fixed price of $6,500, a 5,000-acre ranch situate in Nova Scotia, which formerly belonged to appellant and was sold at foreclosure sale to the mortgage corporation in liquidation of a loan of $8,000 made to appellant, which at the time of the foreclosure proceedings had been reduced to $6,000; the intention and expectation of appellant and Peterson being to resell the ranch, through Peterson's efforts, for $100,000. After some of the installments on the purchase price had been paid to the mortgage corporation, part of the money therefor being furnished by appellant and part by Peterson, a dispute arose between appellant and Peterson as to the extent of the ownership of each in the corporate stock of said corporation, which eventually led to charges of trickery and fraud being made by appellant against Peterson; whereupon appellant, claiming to be the owner of fifty-one per cent of the stock of said corporation, served on Peterson notice of revocation of the latter's authority to sell the ranch. Thereafter appellant made efforts to effect a sale thereof for $25,000, but up to the time this action was commenced he was unsuccessful in finding a purchaser. While this controversy was going on, and on September 26, 1927, appellant filed in the Los Angeles office of the respondent telegraph company, to be transmitted by "night letter", a message addressed to the mortgage corporation at Halifax, for which he paid said telegraph company $1.20. The message read as follows: "Useless delaying for Peterson to pay   Apply money sent by me immediately to payment September obligation. Have specific authority from Peterson do this   Last two payments so made.   Wire me care Postal—balance immediately Peterson has no title to fifty-one per cent Forwarding proofs attested by Peterson." Appellant called at the telegraph office several times during the next three days to ascertain whether a response had been received to his message, but there was none; and on Sepetmber 29th he asked for a copy of the message he had sent, intending to preserve the same as evidence in the event the mortgage corporation should afterward deny having received it, but

the employees were unable to find the original message or any record of the payment of the money for its transmission; and for that reason they expressed doubts about any such message having been filed at that office; however, they stated that the search therefor would be continued. The complaint then goes on to allege that ''By that time complainant knew that he was the victim of a fraud, satisfied as he was that both the telegram and the money could not have been lost and disappeared the same night, except by design; complainant also knowing in that connection that the mortgage company in any attempt to steal at least one hundred thousand dollars ($100,000) worth of property by forfeiture or otherwise, for nothing, had a supreme and vital motive to deny that they ever received the notice contained in the missing telegram, that said R. C. A. Peterson had no title to the 510 shares of the capital stock of the Nova Scotia Company, which, in fact, belonged to complainant.'' And the next day, September 30th, appellant sent a second telegram to the mortgage corporation in substantially the same words over the wires of the Western Union Company. However, as developed during the next few days and as the exhibits attached to the complaint show, the message filed with the respondent telegraph company on the evening of September 26th was in fact delivered to and receipted for by the mortgage corporation at Halifax at 8:42 the following morning, September 27th; and instead of wiring an acknowledgment thereof as requested, it replied thereto on the same day by mail, sending the letter to appellant's address in Seabright, Santa Cruz County; and appellant admits having received the letter on October 6th. The next day, October 7th, appellant notified the respondent company of the receipt of the letter, and a week later, to wit, on October 15th, he received a second letter from the mortgage corporation, dated October 1st, again acknowledging receipt of appellant's telegram and stating that the payment referred to therein had been applied as directed in the telegram, a statement of account being inclosed in the letter; and appellant immediately forwarded a copy of the letter to the respondent company. Moreover, shortly afterward the respondent company succeeded in obtaining from its Halifax office a photostatic copy of the missing original message, and on November 25th, approximately

two months after the message was sent but a year prior to the commencement of this action, delivered said photostatic copy to appellant, informing him at the same time by let-· ter that the mortgage corporation acknowledged having received the same at Halifax at the time above mentioned.

It further appears from the allegations of the complaint and the exhibits attached thereto that as soon as appellant learned that the original message was missing, and despite the expressed willingness on the part of the respondent company and its officers and employees to continue a thorough search therefor in its local and foreign offices and to deliver a copy thereof to him when found, he began and thereafter continued, even after receiving proof of the delivery of the message and the receipt of a photostatic copy thereof, to charge respondents not only with corruptly conniving and conspiring with Peterson and the mortgage corporation to cheat and defraud him of his property, but also with the commission of sundry crimes, characterizing the loss of the original message and the record of the payment of the toll for its transmission as embezzlement, and referring to respondents as "liars", "rascals" and "highwaymen", and stating in his final letter to said company, dated December 1, 1927, " . . . I shall see to it that public attention is drawn to your methods, and that you are ear-marked as conductors of rascally and shady business".

With respect to actions for civil conspiracy, it is well settled that the essential elements thereof are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design; that the cause of action is the damage suffered. (*Mox Incorporated* v. *Woods*, 202 Cal. 675 [262 Pac. 302, 303]; 5 Cal. Jur. 528.) Says the court in the case cited, in quoting from an earlier case (*Revert* v. *Hesse*, 184 Cal. 295 [193 Pac. 943]) : " 'It is a general and well-settled principle of law that, where two or more persons are sued for a civil wrong, it is the civil wrong resulting in damage, and not the conspiracy, which constitutes the cause of action.' " And again, in *Moropoulos* v. *C. H. & O. B. Fuller Co.*, 186 Cal. 679 [200 Pac. 601], the court declares that conspiracy is not actionable unless the combination results in the perpetration of an unlawful act or of some injurious act by unlawful means. In other words, it

is held that a conspiracy, however atrocious its purpose, is not the subject of civil action unless it results in damage to the complaining party. (*Herron* v. *Hughes,* 25 Cal. 556, 560; *Davitt* v. *American Bakers' Union,* 124 Cal. 99 [56 Pac. 775].) ▮ Furthermore, it is held generally that a complaint which contains nothing more than bare allegations that the defendants entered into a conspiracy to defraud plaintiff and committed certain acts in furtherance thereof does not state a cause of action unless those acts are connected with a showing of facts which, if true, would support the charge that they were wrongful (*Moropoulos* v. *C. H. & O. B. Fuller Co., supra*), inferences, generalities, presumptions and conclusions being insufficient (*Davitt* v. *American Bakers' Union, supra*).

▮ In the present case the complaint utterly fails to allege any fact or circumstance showing in the remotest degree any violation of duty on the part of these respondents. As will be observed, the company was employed and paid by appellant merely to transmit over its wires, as a night letter, a telegraphic message from Los Angeles to Halifax at regular rates; and it affirmatively appears from the complaint that it fully and promptly performed its duty in that behalf; that the message was transmitted and delivered in Halifax to the party to whom it was addressed within twelve hours after it was filed in its Los Angeles office. And so far as the complaint and the exhibits show, the only basis for the vituperative charges made by appellant against said company, its officers and employees, was the fact that three days after the message was filed he asked for a copy thereof for the purpose, as he asserted, of preserving it as evidence in the event the addressee afterward denied having received it, and that respondent company was unable for some six weeks thereafter to deliver such copy because, as it claimed, the original message had been mislaid or lost. But as will be noted, appellant suffered no damage whatever therefrom because within a week after the message was filed he received a written acknowledgment from the party to whom it was sent that they had received the message, and that they had complied with the directions contained therein; and within five weeks thereafter the respondent company furnished appellant with a

photostatic copy of the message, together with an acknowledgment of the receipt thereof by the addressee and the date, hour and minute of its delivery. And in any event appellant has not called to our attention any statutory or contractual obligation on the part of telegraph companies requiring them as such to furnish at any and all times and under all circumstances copies of messages filed with them for transmission. Nor does the complaint allege any fact or circumstance whatever tending even inferentially to connect respondents with any conspiracy which appellant asserts existed between others to defraud him. For aught the complaint shows, neither the respondent company nor any of its officers or employees ever heard of the Nova Scotia property or any of the parties connected therewith, or of the controversy existing between appellant and Peterson; and the indulgence in opprobrious language does not serve the purpose of allegations of material facts.

From the foregoing it is evident that in its present form the complaint does not state, nor could it by amendment be made to state, a good cause of action against respondents, and therefore the trial court was justified in sustaining the demurrer without leave to amend.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.