2008-NMCA-123

192 P.3d 777

**Harley Harkness, Worker–Appellant,**

v.

**McKay Oil Corporation, and Mountain States Mutual Insurance Company, Employer/Insurer–Appellees,**

**Raymond FLORES, deceased, Worker–Appellant,**

v.

**McKAY OIL CORPORATION, and Mountain States Mutual Insurance Company, Employer/Insurer–Appellees,**

**Amanda Valerie Encinias, as mother and guardian of Bryttney Arialina Brito, the natural child of Hector Brito, deceased, Worker–Appellant,**

v.

**McKay Oil Corporation, and Mountain States Mutual Insurance Company, Employer/Insurer–Appellees,**

and

**Rebecca Lucero, as mother and guardian of Nicolette Anastasia Brito, the natural child of Hector Brito, deceased, Worker–Appellant,**

v.

**McKay Oil Corporation, and Mountain States Mutual Insurance Company, Employer/Insurer–Appellees.**

No. 27,360.

Court of Appeals of New Mexico.

July 11, 2008.

Certiorari Granted, No. 31,267, Sept. 9, 2008.

Royce E. Hoskins, Trenchard & Hoskins, Roswell, NM, for Appellants.

Katherine E. Tourek, French & Associates, P.C., Albuquerque, NM, for Appellees.

## OPINION

KENNEDY, Judge.

{1} In this case, we adhere to the general "going and coming rule" in workers' compensation law where oil field workers were killed or injured traveling home from a drilling rig located within commuting distance. We hold that exceptions to the rule, most notably the "traveling employee" exception, do not apply because Appellants were not traveling employees and because the evidence does not establish any other exception. Commuting was not required as an integral part of Appellants' job duties for their employer. We affirm the Workers' Compensation Judge's dismissal of their case.

## FACTS AND PROCEDURAL BACKGROUND

{2} Workers Raymond Flores and Hector Brito (Appellants [1]) were killed, and workers Harley Harkness and Angelo Apodaca were injured in a one-vehicle accident on their way home from work. Harkness is not a party to this appeal, nor is Apodaca, who brought no claim from the accident.

{3} Brito was driving the crew back to Roswell in his own vehicle at the time of the accident. The truck failed to negotiate a curve at a high speed, had a blow-out in its left rear tire, and rolled over a number of times, ejecting Harkness and Appellants. They were traveling at the end of their work day from the site of an oil drilling rig to Roswell, where they lived. The accident occurred after working hours and away from the work site. All were employees of McKay Oil Corporation (Employer).

{4} Harkness was the driller for the oil crew in which Appellants worked as roughnecks. They were employed to work on an oil rig operating in southeastern New Mexico, approximately thirty-seven miles from Roswell on the 2–p.m. to 10–p.m. shift. As a driller, Harkness was the supervisor of the crew. This drilling crew was paid an hourly wage beginning when they arrived at the work site and ending when they left. Although they characteristically traveled to and from the rig together, the crew members were responsible for their own transportation to and from the rig site. They did not meet at or go to any place associated with the company on their way to or from the rig. They were not paid for travel time or mileage to and from the drill site. As a driller, Harkness was paid a fifty-dollar daily per diem, which the driller has total discretion to spend as he pleases, for which he does not account to Employer, and which is not subject to any rules as to its application. The driller may, as happened in this case, agree to give his per diem to a crew member who actually drives the crew. The crew did not travel in a company vehicle, and at the time of the accident they were traveling in Brito's truck. There were no requirements concerning crews traveling in any particular vehicle, though it was common for them to travel with the driller. Employer did not require or check for insurance or driver's licenses of its drilling crew members.

{5} Appellants and Harkness filed for workers' compensation benefits arising from the accident. Employer denied that the injuries had arisen out of the course and scope of their employment, asserting that they were traveling from work and that recovery was precluded by the going and coming rule. Below, Appellants also raised the issue of whether they were "traveling employees" as an exception to the going and coming rule. The Workers' Compensation Judge (WCJ) determined in a memorandum opinion that Appellants were not traveling employees and that, except for Harkness's case, no exception to the going and coming rule applied to them.

{6} Subsequently, the WCJ entered findings of fact and conclusions of law, finding that the workers commuted daily from their homes to the work site and back and that the accident occurred after normal working hours and away from the workplace. The WCJ further found that no employee was required to travel with Brito to the work site and that each could have traveled in his own vehicle. The WCJ found that the accident was not in the course of employment, did not

---

1. The Appellants concerned with Brito's claims are actually the mothers of his young daughters, in whose names the claims were brought. Flores' claim was brought in his own name.

arise out of Appellants' employment, and was subject to the going and coming rule. The WCJ dismissed Appellants' claims with prejudice.

## STANDARD OF REVIEW

{7} When considering an appeal from the Workers' Compensation Administration, we engage in whole record review. *Moya v. City of Albuquerque,* 2008–NMSC–004, ¶ 6, 143 N.M. 258, 175 P.3d 926. Whole record review involves a review of all the evidence bearing on the WCJ's decision in order to determine if there is substantial evidence to support the result. *Leonard v. Payday Prof'l,* 2007–NMCA–128, ¶ 10, 142 N.M. 605, 168 P.3d 177; *Herman v. Miners' Hosp.,* 111 N.M. 550, 552, 807 P.2d 734, 736 (1991) ("We will not, however, substitute our judgment for that of the agency; although the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole."); *Tallman v. ABF (Arkansas Best Freight),* 108 N.M. 124, 129, 767 P.2d 363, 368 (Ct.App.1988) (same). We will affirm the WCJ's decision if, after taking the entire record into consideration and applying the law to the facts de novo, "there is evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Leonard,* 2007–NMCA–128, ¶ 10, 142 N.M. 605, 168 P.3d 177 (internal quotation marks and citation omitted).

## DISCUSSION

{8} Appellants realize that to prevail in this case, they must demonstrate that the circumstances of Flores's and Brito's deaths occurred outside of the domain of the going and coming rule. Accordingly, they assert that this accident is covered by the traveling employee exception to the rule. This exception would place workers driving home from their jobs within the scope and course of their employment by relating the means and reasons for their driving more directly to the benefit and purpose of their employment than to merely going to work and leaving it. We discuss the going and coming rule, the traveling employee exception, and our conclusion that Appellants' activities fell well short of what would make them traveling employees.

### The Going and Coming Rule

{9} The Workers' Compensation Act (the Act), NMSA 1978, § 52–1–1 to –70 (1987, as amended through 2007), is designed to compensate workers for injury arising out of and in the course of employment. The going and coming rule is codified by the Act:

> [I]njury by accident arising out of and in the course of employment ... shall not include injuries to any worker occurring while on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which is not the employer's negligence.

Section 52–1–19 (internal quotation marks omitted). As we recently stated, "an employee enroute [sic] to, or returning from, his place of employment, using his own vehicle[,] is not within the scope of his employment absent additional circumstances evidencing control by the employer at the time of the negligent act or omission of the employee." *Lessard v. Coronado Paint & Decorating Ctr., Inc.,* 2007–NMCA–122, ¶ 9, 142 N.M. 583, 168 P.3d 155 (alteration in the original) (internal quotation marks and citation omitted), *cert. quashed,* 2008–NMCERT–002, 143 N.M. 667, 180 P.3d 674; *see Ramirez v. Dawson Prod. Partners, Inc.,* 2000–NMCA–011, ¶ 7, 128 N.M. 601, 995 P.2d 1043 ("Under [the Act], ... workers injured while traveling between home and work are generally not eligible for compensation.").

{10} "It is well settled that this requirement involves two separate inquiries[,]" whether the injury (1) "arose out of" and (2) "in the course of ... employment.... In order to recover benefits, the worker must show that both requirements are satisfied." *Kloer v. Municipality of Las Vegas,* 106 N.M. 594, 595, 746 P.2d 1126, 1127 (Ct.App.1987). "The term 'arising out of' the employment denotes a risk reasonably incident to claimant's work." *Id.* (citing *Losinski v. Drs. Corcoran, Barkoff & Stagnone, P.A.,* 97 N.M. 79, 80, 636 P.2d 898, 899 (Ct.App. 1981)). It requires that the employment be a contributing proximate cause of the injury. The causative danger must be peculiar to the

work itself and not independent of the employment relationship. *McDaniel v. City of Albuquerque*, 99 N.M. 54, 55–56, 653 P.2d 885, 886–87 (Ct.App.1982). The accidental injury must have its *origin* in a risk connected with the employment and have flowed from the risk as a rational consequence. *Id.; Mortgage Inv. Co. of El Paso v. Griego*, 108 N.M. 240, 242–43, 771 P.2d 173, 175–76 (1989). "The phrase, in the course of employment, relates to the time, place, and circumstances under which the accident takes place." *Velkovitz v. Penasco Indep. Sch. Dist.*, 96 N.M. 577, 577, 633 P.2d 685, 685 (1981). We look at whether the injury "takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Chavez v. ABF Freight Sys., Inc.*, 2001–NMCA–039, ¶ 11, 130 N.M. 524, 27 P.3d 1011 (internal quotation marks and citation omitted). If the worker was not reasonably involved in fulfilling the duties of his employment at the time of his injury, he was not acting within the course of his employment. *Gutierrez v. Artesia Pub. Sch.*, 92 N.M. 112, 114, 583 P.2d 476, 478 (Ct.App.1978); *Mortgage Inv. Co. of El Paso*, 108 N.M. at 242–43, 771 P.2d at 175–76.

{11} To sum up, "[t]he general rule is that employment begins when the employee reaches his place of work and ends after he leaves his place of work." *Barton v. Las Cositas*, 102 N.M. 312, 315, 694 P.2d 1377, 1380 (Ct.App.1984). "Ordinarily, an injury that occurs to an employee while he is away from his work place is not compensable as an injury arising out of and in the course of his employment," as the "employment relationship is suspended" between the times an employee leaves work and returns to it. *Id.* This rule generally applies when the employee's employment is encompassed by fixed hours and a fixed place of work. *Espinosa v. Albuquerque Publ'g Co.*, 1997–NMCA–072, ¶ 8, 123 N.M. 605, 943 P.2d 1058. Once employment status is suspended by removing the constraints of the work's time and place, the risk of being on the road on the way to and from work is a risk of the worker's private conduct.

{12} Appellants point to our decision in *Barton* that recognized the possibility of compensation if the employer were negligent and in instances where an "employee's work creates the necessity for the travel," except for travel covered under the going and coming rule. *Id.*, 102 N.M. at 315, 694 P.2d at 1380. Other exceptions exist to the going and coming rule, such as the "dual purpose exception." *See Ramirez*, 2000–NMCA–011, ¶ 10, 128 N.M. 601, 995 P.2d 1043. The dual purpose exception was specifically adopted by the WCJ to confer coverage on Harkness for his injuries based on his job duties requested by his employer beyond the rig site and beyond hours worked by Appellants that made him responsible to haul water to the work site every day—a duty that required taking the water cooler home at night.

{13} Other exceptions that might confer coverage for injuries incurred going to or coming from work arise when the employment contract includes transportation to and from work, when the employee has no fixed place of work, if the employee is on special assignment for the employer, or when special circumstances demonstrate that the employee was furthering the business of the employer. *See Peer v. Workmen's Comp. Appeal Bd. (B & W Constr.)*, 94 Pa.Cmwlth. 540, 503 A.2d 1096, 1098 (1986). In this case, Appellants wish us to apply the special circumstance of employer-required travel to remote (and sometimes various) work sites as a necessary aspect of the employment, furthering its purpose and constituting the basis for the traveling employee exception. It is Appellants' burden to show that they fall within an exception to the going and coming rule. *Barton*, 102 N.M. at 315, 694 P.2d at 1380.

{14} Since the going and coming rule exists to make everyday commuting between home and the workplace the employee's business rather than the employer's, some place of transition must exist where traveling away from the workplace is sufficiently related to the scope and purpose of an employee's job duties that it brings traveling itself within the employment relationship for compensation purposes. Colorado has employed a framework of factors to determine

whether an employee who is injured while going to or coming from work might come under an exception to the going and coming rule because of the employee's travel. While not adopting these tests, we consider them to be highly illustrative of the factors that a court must consider when determining the extent to which travel to and from the work site is related to the core purpose of the employment, which is working in furtherance of the employer's business. These factors include but are not limited to:

> (1) whether the travel occurred during working hours, (2) whether the travel occurred on or off the employer's premises, (3) whether the travel was contemplated by the employment contract, and (4) whether the obligations or conditions of employment created a "zone of special danger" out of which the injury arose. Whether meeting one of the variables is sufficient, by itself, to create a special circumstance warranting recovery depends upon whether the evidence supporting that variable demonstrates a causal connection between the employment and the injury such that the travel to and from work arises out of and in the course of employment.

*Staff Adm'rs, Inc. v. Reynolds*, 977 P.2d 866, 868 (Colo.1999) (en banc) (citation omitted). As we continue to discuss whether Appellants were traveling employees, a status that would place their trip home within the scope and course of their employment, we are mindful of this simple framework.

## The Traveling Employee Exception

{15} A traveling employee is one "whose work entails travel away from the employer's premises." 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 25.01 (2006). Stated another way, a "traveling employee is one whose job requires travel from place to place or to a place away from a permanent residence or the employee's place of business." *Ball–Foster Glass Container Co. v. Giovanelli*, 163 Wash.2d 133, 177 P.3d 692, 698 (2008) (en banc) (quoting 2 John P. Ludington, *Modern Workers Compensation* § 111:15 (Matthew J. Canavan ed., 1993)). "Traveling employees are employees for whom travel is an integral

part of their jobs, such as those who travel to different locations to perform their duties, as differentiated from employees who commute daily from home to a single workplace." *Ramirez*, 2000–NMCA–011, ¶ 11, 128 N.M. 601, 995 P.2d 1043 (internal quotation marks and citation omitted).

{16} Generally, if the worker was not reasonably involved in fulfilling the duties of his employment at the time of his injury, he was not acting within the course of his employment. *See Gutierrez*, 92 N.M. at 114, 583 P.2d at 478. The traveling employee exception serves to expand the scope and course of employment commensurate with the extent to which the employee is required to travel to perform his job duties and incurs risk specifically related to this additional activity. The traveling employee rule exists because there is some work of which travel is an integral part, and hence travel is accomplished in the scope and course of the employment. *Ramirez*, 2000–NMCA–011, ¶¶ 11–12, 128 N.M. 601, 995 P.2d 1043. A job that characteristically takes the employee on the road presents a sufficiently different set of conditions and hazards to the traveling employee, as contrasted with an employee who merely commutes daily to work, and requires a different legal approach. *See id.* ¶¶ 9, 12 ("[I]t is the job's requirement of travel and the employer's authority and control in assigning its employees to different work sites that increase the normal risk and render compensable ... injur[ies] suffered during such travel." (alterations in original) (internal quotation marks and citation omitted)). For this reason, "[t]he general rule is that an employee whose work entails travel away from the employer's premises is, in most circumstances, under continuous workers' compensation coverage from the time he leaves home until he returns." *Id.* ¶ 11 (internal quotation marks and citation omitted).

{17} An example of the traveling employee is one whose job takes the employee on the road over such distances that require eating and sleeping away from home, all to fulfill the duties of employment and further the employer's business. *Id.* Such persons are considered to be in the continu-

ous employment of their employer, "day and night." *Id.* (internal quotation marks and citation omitted). Such a traveling employee is exposed by his employment to hazards inherent to travel that he might otherwise have the option of avoiding. As such, "the hazards of the route become the hazards of the employment." *Id.* ¶ 12 (internal quotation marks and citation omitted). In *Chavez*, a case that illustrates this example, a truck driver was in a motel room in the course of his trip because the law required him to take an eight-hour break. *Id.*, 2001–NMCA–039, ¶ 4, 130 N.M. 524, 27 P.3d 1011. The driver was expected to sleep, and his injury occurred while moving a dresser to better access the phone on which he expected a wake-up call. *Id.* ¶ 5. We applied the traveling employee rule because this worker was exactly where he was supposed to be, doing what was required by his employment at the time he was injured. *Id.* ¶ 14. Therefore, the injury "occur[red] during the commission of an activity that [was] reasonable and foreseeable both as to its nature and manner of commission, and must [have] be[en] of some benefit to the employer." *Id.* ¶ 15 (internal quotation marks and citation omitted).

## Elements of the Exception: The Nature of the Employee's Travel

■ {18} The increased risk to the employee of required travel away from home is the primary consideration in establishing the exception. It is not that the travel on the road creates the exception but that the job requires the employee to travel and does so under the "employer's authority and control in assigning its employees to different work sites." *Ramirez*, 2000–NMCA–011, ¶ 12, 128 N.M. 601, 995 P.2d 1043 (internal quotation marks and citation omitted). Thus, a traveling employee is one for whom travel is required by the employer and is essential to the work required of the employee by the employer. *Id.* ¶ 17. Such travel takes the employee between different work sites. In *Chavez*, these requirements were met because travel was necessary to transfer trucks for the employer's benefit. *Id.*, 2001–NMCA–039, ¶ 4, 130 N.M. 524, 27 P.3d 1011.

In *Ramirez*, the two compensated employees were (respectively) traveling to a designated location for mandatory time off and making a round trip to launder uniforms.[2] *Id.*, 2000–NMCA–011, ¶¶ 18–19, 128 N.M. 601, 995 P.2d 1043. The third employee who was not compensated was just riding along to accompany the employee who would return with the laundry. *Id.* ¶ 20. Similarly in this case, the WCJ ordered compensation for Harkness because his job duties required him to supply drinking water to the rig and excluded Appellants from compensation by the going and coming rule.

## Elements of the Exception: The Relationship of the Injury to the Employment

■ {19} Because the exception applies to activities within the course and scope of employment, the injury must "arise out of" the worker's employment, and we must consider the time, place, and circumstances of the injury's occurrence. *Id.* ¶ 14. This means that an employee "was performing acts the employer instructed the [employee] to perform, acts incidental to the [employee]'s assigned duties, or acts which the [employee] had a common law or statutory duty to perform." *Id.* (internal quotation marks and citation omitted). Additionally, we held in *Ramirez* that the activity giving rise to the injury must confer some direct benefit on the employer and that it must be reasonably related or incidental to employment. *Id.* ¶ 16. In such an instance, the employee's time spent traveling is brought within the course and scope of his employment.

■ {20} Appellants urge that any employee becomes a "traveling employee" if the travel is "reasonably incidental to conditions and circumstances" of the employment. They cite *Ramirez* for this proposition and then quote the opinion as requiring the travel to be "an integral part of their jobs, ... differentiated from employees who commute daily from home to a single workplace [sic]." *Id.* ¶ 11 (internal quotation marks and citation omitted). Appellants erroneously seek an expanded view of "incidental" to encom-

2. The dual-purpose doctrine is suggested by this second circumstance, though in *Ramirez* we af-

firmed coverage for the workers as traveling employees.

pass "integral." While employment is certainly "the cause of the workman's journey between his home and the factory, it is generally taken for granted that workmen's compensation was not intended to protect [an employee] against all the perils of that journey." *Id.* ¶ 7 (internal quotation marks and citation omitted). Merely driving one's self to work does not establish one of these exceptions. Such conduct is the essence of "going and coming" and does not arise from the work or from its course or scope. It is clear that to prevail on their claim that the traveling employee exception applies, Appellants' driving must be something more essential to their work as a drilling team for Employer than mere commuting to and from work.

### Injuries Did Not Arise Out of Appellants' Employment Nor From Its Course and Scope

■ {21} The foregoing constitutes the framework for our evaluation of the WCJ's conclusion that the going and coming rule precluded compensating Appellants as "traveling employees" as this term was used in *Ramirez.* We conclude that substantial evidence supports this legal conclusion and address the elements of the rule in turn.

### 1. Injuries Did Not Arise Out of the Employment

■ {22} It is necessary that both the risk of injury and the proximate cause of injury arise out of the employment to allow an award of compensation. *See* Section 52–1–19. Ordinarily, the hazards of traveling to and from work are not hazards of the job but hazards that are faced by all travelers that are unrelated to the employer's business. *Barrington v. Johnn Drilling Co.,* 51 N.M. 172, 177, 181 P.2d 166, 169 (1947). However, the traveling employee doctrine recognizes that because the employment itself requires travel, the traveling employee is necessarily exposed to hazards due to the employment which other employees are not exposed to because of their employment. *Ramirez,* 2000–NMCA–011, ¶ 12, 128 N.M. 601, 995 P.2d 1043 ("[I]t is the job's requirement of travel and the employer's authority and control in assigning its employees to different work sites that increase the normal risk[.]" (internal quotation marks and citation omitted)). Evidence before the WCJ from the overall supervisor of the rig, John Pogue, clearly indicated that the employees did not reside at the job site because "there [was] no need to." Harkness testified that he had worked for Employer precisely because Employer's rigs were close to his home. This is not the traveling employee scenario.

{23} The fact that Harkness turned over the $50 per diem that he received from Employer does not make Brito a traveling employee. *Barrington,* 51 N.M. at 178, 181 P.2d at 170 (holding that "[m]ore is required" than payment of the cost of transportation to establish liability). There is no evidence that· the per diem represents payment for transportation as a benefit furnished under the employment contract. Employer did not furnish transportation, nor did it specifically pay to transport its workers to the rig. *Id.* (stating the general rule that mere payment of transportation where an injury is sustained in the trip does not arise out of and in the course of employment). The situation in *Barrington* was different, in fact, in that transportation was provided as direct compensation in the employment bargain because wages had been frozen. *Id.*

{24} Here, Employer exerted no authority or control over Appellants either before or after work. Employer imposed no requirement on employees' driving or on other employee conduct away from the drilling rig. Driver's licenses and insurance were not checked or verified by Employer, and no one was assigned to drive anyone else. Each crew member was responsible for his own transportation to and from the rig. Appellants were discharging no duty to or request of Employer. "When work for the day has ended and the employee has left the premises of his employer to go to his home, the liability of the employer ceases[.]" *Id.* at 179, 181 P.2d at 171 (internal quotation marks and citation omitted).

### 2. The Workers Were Not In the Course and Scope of Their Employment

■ {25} The "course of employment" prong of the going and coming rule

similarly precludes Appellants' entitlement to compensation. This requirement "demands that the injury be shown to have arisen within the time and space boundaries of the employment, and in the course of an activity whose purpose is related to the employment." 1 Larson, *supra*, § 12.01 (1999). Traveling employees' work brings their travel within the boundaries of the employment relationship, expanding the circumstances in which compensation is available to them even though they are not working at the employer's premises.

{26} Appellants' employment began when they got to the rig and ended when they left. *Barton*, 102 N.M. at 315, 694 P.2d at 1380; *see Barrington*, 51 N.M. at 179, 181 P.2d at 171. Appellants had finished their work day and were traveling home at the time of the accident. *See Feldhut v. Latham*, 60 N.M. 87, 90–92, 287 P.2d 615, 617–19 (1955) (holding that when an accident occurs outside of the work day for which an employee is paid, the employee must otherwise bring himself within ambit of his employment to be entitled to compensation for injury under the Act). For purposes of resolving this case, the rig at which Appellants worked had a "fixed" location; it did not move. Fixed hours and a fixed place of work generally allow for compensation only to be awarded for accidents occurring on the employer's premises. 1 Larson, *supra*, § 13.01 (2005). Appellants' work for the day had ceased, and they were not compensated for their time while traveling or for mileage. *See Rinehart v. Mossman–Gladden, Inc.*, 77 N.M. 470, 472, 423 P.2d 991, 992 (1967) (stating that not being compensated for time while traveling is a factor in determining that a person is no longer operating in the scope and course of the person's employment). Even if Brito had not been driving his own vehicle at the time of the crash, traveling home from work in the employer's vehicle does not necessarily place an employee within the course of his employment. *Id.* at 471–72, 423 P.2d at 991–92.

{27} The evidence below shows that the rigs were located about thirty-seven miles from Appellants' homes and that the two operating rigs were within a couple of miles of each other. In *Ramirez*, the rig was ninety miles away from the employees' homes, and the employees lived away from home, with their employer paying for food, lodging, and travel to the work site. *Ramirez*, 2000–NMCA–011, ¶¶ 2–3, 128 N.M. 601, 995 P.2d 1043. With regard to distance from living accommodations, Appellants' assertion that they were required to travel because of the "lack of accommodations at the rig site, and any type of crew vehicle provided by [Employer]" rings hollow. Nothing about their job duties required them to travel any great distance away from their residences to work on Employer's oil rig. The rig itself was a fixed work site. The WCJ found that Appellants were commuters and that they did not need to seek accommodations or board away from home. These findings were reasonably based on the evidence. Appellants' emphasis on the time spent getting their crew together to go to work is similarly nonpersuasive; no employee was required to travel with the crew. We hold that nothing about the distance between Appellants' homes and the rig was so burdensome as to confer upon Appellants any status beyond that of mere commuters.

{28} Appellants' observation that *Loffland Bros. v. Baca*, 651 P.2d 431 (Colo.Ct.App. 1982) is specifically related to the oilfield does not assist their position. In *Loffland Bros.*, the Colorado company hired the employees to work on a rig in Vernal, Utah, where the workers stayed and worked for two months. *Id.* at 432. They were assigned to a driller who was paid to collect and transport his crew to the drill site until the work was completed. *Id.* The Colorado Court of Appeals held that the employer's requirement that the drilling crew travel a "considerable distance" and that the driller provide their transportation, for which the driller was compensated, conferred a benefit on the company "beyond the sole fact of the employee's arrival," namely keeping crews together so the company would have a full crew on hand. *Id.* at 432–33. Accordingly, the company had paid the driller to collect the crew members and bring them to the drill site. *Id.* at 433. The employees in *Loffland Bros.* traveled to and from the remote work site in a particular vehicle and in

a particular manner as required by the employer. *Id.* at 432. This is quite distinct from the case before us, where the employees were merely returning home from work by sharing a ride.

{29} Appellants cite a number of cases illustrating various exceptions to the going and coming rule which are not apposite here. Many are cases in which the employer specifically provided transportation as a benefit of the employment contract. *See, e.g., Christian v. Nicor Drilling Co.,* 653 P.2d 185 (Okla.1982); *see also Barrington,* 51 N.M. at 174, 181 P.2d at 168. These cases do not reflect the facts of this case.

{30} In citing *Edens v. N.M. Health & Soc. Servs. Dep't,* 89 N.M. 60, 547 P.2d 65 (1976), Appellants point us to the similarly inapposite "special errand" exception to the going and coming rule by which our Supreme Court conferred employment status on the worker until her arrival home from a trip that was a singular occurrence to accomplish a singular goal for the employer—attending a required conference and driving fellow employees to it as well. *Id.* at 63, 547 P.2d at 68. *Brown v. Arapahoe Drilling Co.,* 70 N.M. 99, 370 P.2d 816 (1962), was decided for the driller, as was the claim of Harkness decided below, based on the dual purpose doctrine, since the driller was carrying papers for the home office at the end of the day. *Brown* distinguishes between the driller, who was carrying out a service for the employer, from the other members of his crew, whose primary purpose was merely their traveling home. *Id.* at 102–03, 370 P.2d at 819. In *Wilson v. Rowan Drilling Co.,* 55 N.M. 81, 86–87, 227 P.2d 365, 368–69 (1950), the question was whether the driller was acting within the parameters of his employment since he was outside his normal working hours. The Supreme Court held that "[f]rom the time he got in Compton's car until he would have arrived at the drill site had he not been killed, he was acting in the course of his employment, in that he was seeing to it that the crew would be on hand at four o'clock to begin work." *Id.* at 89, 227 P.2d at 370. There, the driller himself had the specific responsibility, not present in this case, to ensure that his crew members were present at the rig and remained there for their shift by personally arranging for their transportation. Nothing in *Wilson* held that the crew members with whom the driller traveled were on any special mission encompassed by their employment. In this case, the WCJ found that no worker was required to travel with any other worker but that each could travel to the rig in his own vehicle. We hold that this finding was reasonably supported by the evidence.

{31} Appellants have not established that their travel gave rise to an exception to Section 52–1–19 or to the common-law going and coming rule. In short, Appellants' employment was not a contributing proximate cause of the accident since no circumstance necessarily arising from their employment presented them with any greater risk on the way home than that faced by normal commuters. It was not the lack of accommodations at the rig that caused them to travel home but rather the proximity of the rig to their residences. Their employment likewise did not require them to travel away from the location where they worked to perform other duties of their employment, and at the time of the accident they were not performing such other duties.

**CONCLUSION**

{32} We conclude that the WCJ had ample evidence in the record to support the conclusion that Appellants were not traveling employees as defined under *Ramirez* and that compensation for their deaths was precluded by the going and coming rule. The judgment of the WCJ was reasonably based upon substantial evidence that the drilling crew was commuting and that their driving was not essential to their job duties. We therefore affirm the decision of the Workers' Compensation Judge.

{33} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and MICHAEL E. VIGIL, Judges.