IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**RALPH McGARY,**

Worker-Appellee,

v.                                                                    **NO. 28,867**

**AMS STAFF LEASING and**
**DALLAS NATIONAL,**

Employer/Insurer-Appellant.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Victor S. Lopez, Workers' Compensation Judge**

Trenchard & Hoskins
Royce E. Hoskins
Paul Tellez
Roswell, NM

Diamond Law Firm
Jeffrey B. Diamond
Carlsbad, NM

for Appellee

Christina Bartosh Goodrow
Albuquerque, NM

for Appellant AMS Staff Leasing

Paul L. Civerolo, L.L.P.
Paul L. Civerolo
Albuquerque, NM

for Appellant Dallas National

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

Employer appeals from the Workers' Compensation Judge's (WCJ) decision. This Court's first notice of proposed disposition proposed summary reversal. Worker filed a memorandum in opposition to the proposed disposition. Employer filed a memorandum in support of the proposed disposition. We were not persuaded by Worker's arguments in opposition, and we reverse the WCJ's decision.

Worker asserts that this Court's proposed disposition is misplaced under *Ramirez v. Dawson Production Partners, Inc.*, 2000-NMCA-011, 128 N.M. 601, 995 P.2d 1043, because it fails to lend credence to the amount of travel required for non-supervisory oilfield workers in southeast New Mexico to get to their places of employment. [MIO 8] Worker further contends that *Flores v. McKay Oil Corp.*, 2008-NMCA-123, 144 N.M. 782, 192 P.3d 777, is distinguishable because contrary to the evidence in this case, the workers in *Flores* had a fixed situs of work. [MIO 9, n.1] Worker further asserts that his injury occurred at a place and time where he was reasonably fulfilling his duties of employment, traveling as a crew member to varying drilling site locations. [MIO 9] We disagree.

Worker points out evidence that oilfield workers travel extensively as part of their jobs throughout the year because the oil drilling companies move their rigs from

various locations in southeast New Mexico and West Texas. [MIO 3] In fact, Employer was operating six drilling rigs in various locations in southeast New Mexico. [MIO 5] In addition, the various drilling rigs operated by Employer were located anywhere from 10 to 120 miles away from Carlsbad. Thus, Worker asserts that he might be expected to travel between home and alternating oil rigs. [MIO 3]

Nevertheless, the evidence is undisputed that the rig had a fixed location and that Worker commuted forty miles from his home to the same fixed work site. *Cf. Flores*, 2008-NMCA-123, ¶ 27 (determining that the workers were not traveling employees where the fixed rig site was located thirty-seven miles from the workers' homes and the evidence showed that workers were commuters); *see Ramirez*, 2000-NMCA-011, ¶ 11 ("Traveling employees are employees for whom travel is an integral part of their jobs, such as those who travel to different locations to perform their duties, as differentiated from employees who commute daily from home to a single workplace." (internal quotation marks and citation omitted)). [DS 6] While future assignments might require Worker to travel, at the time of the accident, there is no question that Worker had but one work site he traveled to on a daily basis. *See Flores*, 2008-NMCA-123, ¶ 18 (stating that the travel required of a traveling employee takes the employee between different work sites).

In addition, while Worker asserts it was standard practice in the industry for the

3

driller to pick up the crew and drive them to the rig site to ensure they showed up ready to work at a particular time [MIO 4], there was no evidence that these were the circumstances here. Similarly, to the extent it was industry standard for the employer to pay the driller a travel allowance to perform his function on behalf of the employer [MIO 4], there was no such evidence here. Worker testified that he was not paid compensation or gas money for travel to and from the rig. [DS 6 ] Worker also relies on his erratic work schedule as a relief crew member and how this exposed him to increased risks while conferring a benefit to Employer by providing time off for regular crew members. [MIO 4, 9] To the extent the WCJ made findings in this regard [RP 449, fof 17; RP 455, fof 52-54; RP 460, fof 82-86], we hold that the facts in this case do not support the legal conclusion that Worker was a "traveling" employee.

We hold that *Ramirez* is factually distinguishable. In *Ramirez*, the fact that workers provided their own transportation in exchange for having an extra crew member was merely supplemental to the fact that workers were on special assignment and were provided $56.50 per day for lodging, meals, and travel to a site ninety miles away. *Ramirez*, 2000-NMCA-011, ¶¶ 2-3. These supplemental facts are the essence of a traveling employee. *See Flores*, 2008-NMCA-123, ¶ 17 ("An example of the traveling employee is one whose job takes the employee on the road over such distances that require

4

eating and sleeping away from home, all to fulfill the duties of employment and further the employer's business"). Unlike *Ramirez*, here the fact that Worker was a member of the relief crew and drove himself to work, in spite of his erratic schedule that was merely a coincidental benefit to Employer. Employer did not provide for Worker's transportation in any way. *Cf. Flores*, 2008-NMCA-123, ¶ 23 ("Employer did not furnish transportation, nor did it specifically pay to transport its workers to the rig.").

Worker cites *Loffland Brothers v. Baca*, 651 P.2d 431 (Colo. Ct. App. 1982), and *Lassabe v. Simmons Drilling Inc.*, 743 P.2d 568 (Mont. 1987), in support of his contention. *Flores* has already distinguished *Loffland* for our purposes in cases such as are presented here. We are reluctant to rely on authority from other jurisdictions when New Mexico case law sufficiently addresses the issues. Nevertheless, these cases are factually distinguishable because, as demonstrated by the quotes taken from the cases, the employers explicitly provided for the workers' transportation. *See Loffland Bros.*, 651 P.2d at 432; *Lassabe*, 743 P.2d at 571. It also appears that in *Loffland Brothers*, the workers were on special assignment, working on a rig in another state, and the workers stayed there for two months. *Loffland Bros.*, 651 P.2d at 432.

Finally, to the extent Worker asserts that the issue presented is one of substantial public interest to oilfield workers in New Mexico [MIO 13], we believe the law is clear and provides a framework of factors to consider in analyzing the

5

traveling employee exception.  The changing circumstances and conditions in the industry are  sufficiently addressed in recent case law, including *Flores*, which was published this year.  Worker has not provided a factual scenario warranting a different interpretation under the law.

It is this Court's function to interpret the law, and we are not bound by the WCJ's legal interpretation.  *Morningstar Water Uses Ass'n v. New Mexico Pub. Utility Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995).  We hold that the facts of this case do not establish a traveling employee scenario.  For these reasons and those stated in the first notice of proposed disposition, we reverse the WCJ.

**IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**RODERICK T. KENNEDY, Judge**