This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**PETE RODRIGUEZ, JOSÉ TURRUBIATES, BILL and NORMA CORSAUT, as Guardians of Minor Children DRAVEN CORSAUT and DEVAN WILLIAMS, Natural Children of ELOY DOPORTO, JR., Deceased, and MIKE LUCAS,**

Workers-Appellants,

v.                                                                    **NO. 29,435**

**PERMIAN DRILLING CORP., and AMERICAN HOME ASSURANCE,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Helen L. Stirling, Workers' Compensation Judge**

Trenchard & Hoskins
Royce E. Hoskins
Paul G. Tellez
Roswell, NM

for Appellants

The Chavez Law Firm
Gonzalo Chavez
Roswell, NM

for Appellant

Butt Thornton & Baehr P.C.
Carlos G. Martinez
Emily A. Franke
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**VANZI, Judge.**

In this case, we again examine the application of the "going and coming rule" in workers' compensation law where oil field workers were killed and injured in an automobile accident while traveling to a mobile drilling rig to begin their shift. Appellants, Pete Rodriguez, José Turrubiates, Mike Lucas, and Eloy Doporto, Jr.[1] (collectively, Workers) appeal a Workers' Compensation Judge's (WCJ) order dismissing Workers' claims for compensation against Appellees, Permian Drilling Corporation (Permian) and American Home Insurance (American).

Workers argue on appeal that the WCJ erred in concluding that Workers were not traveling employees as defined by New Mexico case law and, therefore, the

---

[1] The Appellants concerned with Eloy Doporto's claim are actually Bill and Norma Corsaut, as guardians of Eloy Doporto's minor children, Draven Corsaut and Devan Williams, the natural children of Eloy Doporto.

accident did not arise out of and was not within the course of Workers' employment. We affirm the WCJ's decision.

**BACKGROUND**

The following facts are not disputed. Oil field workers Pete Rodriguez, José Turrubiates, and Mike Lucas were injured, and Eloy Doporto, Jr. was killed in a single-vehicle rollover accident while en route from their homes to their job site. The four men were members of an oil well drilling crew employed by Permian.

Permian is an oil well drilling company with its offices located in Hobbs, New Mexico. Permian operates a number of mobile drilling rigs throughout southeastern New Mexico and, occasionally, west Texas. The crews Permian hires to operate its rigs live in various locations in and around southeastern New Mexico, including Carlsbad, Hobbs, Lovington, and Artesia. The drilling rigs are mobile and are moved to a new location after the drilling of each well is completed, typically every seven to eight days. The rigs operate twenty-four hours a day, seven days a week, using four crews. The crews work three eight-hour shifts. The fourth crew is a relief crew that replaces the other crews on their days off by working two days on each of the three shifts followed by two days off. The drilling crews report to work at the current location of the rig to which they are assigned.

The hierarchy of command at Permian's oil rig sites is as follows. The drilling superintendent is the senior person when he is on-site; however, he is only present on-site sporadically. Next in command is the tool pusher, who lives at the site and is responsible for overseeing site operations. Immediately below the tool pusher is the driller on-shift, who supervises his crew and drilling operations for that shift. The driller has the authority to hire his crew (subject to Permian's approval) and to fire crew members when necessary. Permian pays its drillers a twenty-five-cent-per-mile reimbursement for the expense of travel to and from the job site. Although crew members are not required to travel to the job site with the driller, this is an available option. Whether crew members choose to travel to the job site on their own or with the driller, they do not receive any compensation for their travel.

Rodriguez was the driller in charge of the crew involved in the accident. At the time of the accident, the mobile drilling rig to which Rodriguez's crew was assigned was located approximately sixty to seventy miles west of Hobbs, New Mexico. On the day of the accident, the crew was to have worked the day rotation of the relief shift. It was Rodriguez's customary practice to pick up his crew from their homes in Hobbs and transport them to the job site in his personal truck

On the day of the accident, Rodriguez, following his regular routine, picked up his crew and stopped at a gas station for gas. Rodriguez then determined that he was too tired to drive to the job site safely, and he asked Lucas, one of the crew members,

4

if he thought he was rested enough to drive to the site. Lucas responded that he felt capable of driving, and with Lucas driving, the crew set off along Highway 529, their usual route to their current job site. While driving to the job site, Lucas fell asleep at the wheel and lost control of the vehicle. The truck veered off the road and rolled over, killing Doporto and injuring the other members of the crew.

Rodriguez, Turrubiates, and Lucas each filed claims for benefits under the Workers' Compensation Act (the Act). A claim for death benefits under the Act was filed for Doporto. The claims were denied by Permian and American on the ground that the injuries did not occur within the course and scope of employment. The four cases were consolidated, and the parties agreed to a bifurcated trial, with the issue of compensability tried first and benefit entitlement to be tried later, if necessary.

The WCJ dismissed Workers' claims, holding that Workers' accident was not within the course of Workers' employment because the circumstances of the accident did not meet any of the recognized exceptions to the going and coming rule defined in NMSA 1978, Section 52-1-19 (1987). Workers make two arguments on appeal. First, Workers argue that the accident arose out of and in the course of their employment because Workers' circumstances fit the traveling employee exception to the going and coming rule. Second, Workers argue that the crew's driller, in particular, was reasonably fulfilling the duties of his employment at the time of the

accident because he was transporting the rest of the crew to the job site. We address each of Workers' arguments in turn.

**DISCUSSION**

**Standard of Review**

We review workers' compensation cases using a standard of whole record review. *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926 (filed 2007). "Whole record review involves a review of all the evidence bearing on the WCJ's decision in order to determine if there is substantial evidence to support the result." *Flores v. McKay Oil Corp.*, 2008-NMCA-123, ¶ 7, 144 N.M. 782, 192 P.3d 777, *cert. quashed*, 2009-NMCERT-003, 146 N.M. 604, 213 P.3d 508. "We will not, however, substitute our judgment for that of the agency; although the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole." *Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991). We will affirm the WCJ's decision if, after taking the entire record into consideration and applying the law to the facts de novo, "there is evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Leonard v. Payday Prof'l*, 2007-NMCA-128, ¶ 10, 142 N.M. 605, 168 P.3d 177 (internal quotation marks and citation omitted).

Where the facts of the case are undisputed, the question of whether the accident arose out of the employment is a question of law. *Ramirez v. Dawson Prod. Partners,*

*Inc.*, 2000-NMCA-011, ¶ 14, 128 N.M. 601, 995 P.2d 1043.  The court will grant some deference to a legal determination that falls within the agency's expertise; however, the court is not bound by the agency's legal interpretation.  *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995).  It is the function of the Court to interpret the law.  *Id.*

**The Going and Coming Rule**

The purpose of the Workers' Compensation Act is to compensate workers for injuries "arising out of and in the course of employment."  Section 52-1-19 (internal quotation marks omitted).  The Act defines injuries "arising out of and in the course of employment" to be injuries that are a result of the worker's employment that occur "while at work in any place where their employer's business requires their presence."  *Id.*  The Act, however, specifically excludes from the course of employment a worker's time spent "while on his way to assume the duties of his employment or after leaving such duties."  *Id.*  This exclusion is commonly referred to as the "going and coming rule."  *Flores*, 2008-NMCA-123, ¶ 9.

The rationale behind the going and coming rule is that "while admittedly the employment is the cause of the worker's journey between home and factory, it is generally taken for granted that workers' compensation was not intended to protect against all the perils of that journey."  1 Arthur Larson, *Larson's Workers' Compensation Law* § 13.01, at 13-3 (2008).  The rule does not, however, act to bar

7

compensation in all instances where a worker's injury occurs while the worker is traveling to and from work. New Mexico courts have recognized several well established exceptions to the rule including: the traveling employee exception, the dual purpose exception, the special errand exception, and the employer's conveyance exception. *Ramirez*, 2000-NMCA-011, ¶¶ 10, 11. Exceptions to the general rule apply where the circumstances of the travel to and from work are such that the travel itself must be considered part of the service the worker is performing for the employer. *See Barrington v. Johnn Drilling Co.*, 51 N.M. 172, 177, 181 P.2d 166, 169 (1947). In this case, the only exception to the going and coming rule that Workers raise on appeal is the traveling employee exception. We therefore limit our analysis to the arguments raised by Workers and to the findings of the WCJ as they apply to those claims.

**Workers Were Not Traveling Employees**

Workers argue that because of the distance between their work site and their homes and because of the mobile nature of the oil rig on which they worked, their circumstances at the time of the accident fall within the traveling employee exception to the going and coming rule. The WCJ concluded otherwise. Based on a whole record review, we determine that there is substantial evidence in the record to support the WCJ's findings and conclusions that Workers' circumstances did not meet the requirements of the traveling employee exception.

8

A traveling employee is one who is required by their employer to travel from place to place, or to a place a significant distance from the employee's permanent residence or the employer's place of business, in order to fulfill the duties of their employment. *Flores*, 2008-NMCA-123, ¶¶ 15, 18. A traveling employee is not, however, one who must simply travel significant distances to and from his job; rather, the travel must be an integral part of the job itself. *See Ramirez*, 2000-NMCA-011, ¶ 11. One common example of a traveling employee is one whose job requires travel of such distances that the employee is required to eat and sleep away from home. *Flores*, 2008-NMCA-123, ¶ 17. Where employment requires this type of travel, the employee is potentially exposed to hazards he or she would otherwise have the option of avoiding. *Id.* ¶ 18. It is this increased risk to the employee that is the primary consideration in establishing the exception. *Id.*

This Court first recognized the traveling employee exception in *Ramirez.* In that case, we held that the exception applied to two of three oil rig workers injured in an automobile accident while traveling home from a remote job site to which they had been temporarily assigned. *Ramirez*, 2000-NMCA-011, ¶¶ 1, 2. The temporary job site was ninety miles from the workers' homes and the employer's home offices. *Id.* ¶ 2. The workers were assigned to a type of drilling rig operation that required around-the-clock work with very little time off. *Id.* ¶¶ 2, 4. The long and irregular work hours made it necessary for the workers to remain at the job site between shifts

9

rather than to commute between home and work. *Id.* ¶¶ 3, 4. Because of the demanding schedule, the workers were paid $56.50 per diem in order to pay for lodging and meals near the remote job site. *Id.* ¶ 2. Based on those facts, we concluded that the workers' travel at the time of their accident was an integral part of their employment and, therefore, the traveling employee exception applied for the purpose of determining workers' compensation benefits. *Id.* ¶ 17.

Similarly, in *Chavez*, we found that the traveling employee exception applied to two truck drivers in consolidated cases who were injured while en route between Albuquerque, New Mexico, and Weatherford, Oklahoma. *Chavez v. ABF Freight Sys., Inc.*, 2001-NMCA-039, ¶ 1, 130 N.M. 524, 27 P.3d 1011. The truck drivers were injured while taking their federally-mandated eight-hour rest breaks at a motel designated and paid for by their employer. *Id.* ¶¶ 1-2. This Court determined that the truck drivers were within the traveling employee exception because the duties of their jobs required them to travel sufficiently long distances away from their homes, they were required to sleep in hotels, and their hotels were paid for and designated by their employer. *Id.* ¶¶ 1, 14. Travel was thus an integral part of their employment. *Id.* ¶ 14.

Most recently, in *Flores*, we held that the traveling employee exception did not apply to two oil field workers involved in an accident while driving home after completing their shift. 2008-NMCA-123, ¶ 1. There the workers traveled daily to the

10

same job site, which was in a fixed location thirty-seven miles from the workers' homes. *Id.* ¶ 4. We concluded that the workers did not meet the requirements of the exception because their travel to and from the job site was not an integral part of their employment but was instead part of a regular commute, which is the essence of the exclusion of coverage provided by the going and coming rule. *Id.* ¶ 20.

Similarly, in the present case, we find substantial evidence in the record to support the WCJ's finding that Workers' travel between their homes and the various job sites was not an integral part of their employment and, therefore, did not place them within the traveling employee exception. At the time of the accident, neither the duties of the job, the distance traveled, nor the work schedule itself required Workers to stay away from home for extended periods. Workers were not required to stay at or near the job site; rather, they returned to their homes after each shift. The record shows that Workers' commute to and from the job site was approximately seventy miles one way. The WCJ found that this distance was not excessive or beyond what many people in New Mexico travel on a daily basis. The record also shows that Workers generally worked a defined schedule with regular hours.

Workers argue that the mobile nature of the job site places them within the traveling employee exception. The record indicates that the mobile drilling rig to which Workers were assigned moved to a new location every seven to eight days upon completion of drilling at a given well site. As a result, Workers were required to

11

report to the new drilling location for their next assigned shift. However, a mobile work site alone is not sufficient to make travel an integral part of Workers' employment. *Flores*, 2008-NMCA-123, ¶ 27.

In addition, the fact that Permian paid the crew's driller, Mr. Rodriguez, twenty-five-cents-per-mile reimbursement for travel expense for travel to and from the job site does not make him a traveling employee. The WCJ found that the per diem did not represent payment for transportation as a benefit but was merely payment to help defray the costs of Mr. Rodriguez's vehicle use. The WCJ's findings support a conclusion that Permian did not furnish transportation or pay to transport Workers to the rig.

Based the facts before us, we conclude that there is substantial evidence in the record to support the WCJ's findings and conclusions that Workers' circumstances at the time of the accident did not meet the requirements of the traveling employee exception.

**Driller Was Not Fulfilling Duties of His Employment at Time of Accident**

Workers argue that the driller in particular is compensable because he was "reasonably fulfilling the duties of his employment" at the time of the accident in that he was charged by Permian with the responsibility of transporting his crew to the job site. We disagree.

The WCJ specifically found that while "[t]he driller was required to have a full crew at the rig for his tour," Permian "did not require crew members to ride with the driller to the rig nor did it require the driller to pick up and bring the rest of his crew; [W]orkers were allowed to drive themselves to the work site, although only the driller (Rodriguez) would receive expense money." We note that there was much conflicting testimony at trial concerning custom and practice in the industry regarding a driller's responsibility to transport his crew to and from the job site; however, there is substantial evidence in the record to support the WCJ's finding that, in this case, Permian did not require the driller to provide transportation for his crew. As noted above, we will not "substitute our judgment for that of the agency; although the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole." *Herman*, 111 N.M. at 552, 807 P.2d at 736. We therefore hold that the WCJ properly found that the driller was not fulfilling the duties of his employment at the time of the accident.

**CONCLUSION**

For the reasons set forth above, we affirm the WCJ's dismissal of Workers' claims for coverage under the Workers' Compensation Act.

**IT IS SO ORDERED.**

_____

13

                                             **LINDA M. VANZI, Judge**

**WE CONCUR:**


_____

**CELIA FOY CASTILLO, Judge**



_____

**RODERICK T. KENNEDY, Judge**